In re Darrell Ray BAIRRINGTON, Sr., Jo
Ann Bairrington d/b/a Bairrington
Land & Cattle, Debtors.

Kuppusamy RAGUPATHI and Rohini
Ragupathi, Plaintiffs,

v.

Darrell Ray BAIRRINGTON, Sr. and
Jo Ann Bairrington, Defendants.

Bankruptcy No. 94–60945–LK.
Adv. No. 94–6104.

United States Bankruptcy Court,
W.D. Texas,
Waco Division.

June 20, 1995.

John A. Montez, Waco, TX, for debtors.

W. Stephen Rodgers, Bryan, TX, Blake Rasner, Haley & Davis, P.C., Waco, TX, for movants.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

LARRY E. KELLY, Chief Judge.

On May 18, 1994, after a jury trial in the 272nd District Court of Brazos County Texas, Kuppusamy Ragupathi and Rohini Ragupathi ("Plaintiffs") obtained a judgment against Darrell Ray Bairrington, Sr. and Jo Ann Bairrington ("Defendants" or "Debtors"). That court concluded that Defendants had violated the Texas Deceptive Trade Practices Act ("DTPA")[1] and awarded actual damages and prejudgment interest in the amount of $557,076.68. It also awarded an additional $2,000 as authorized by the DTPA and because the jury found that certain actions were committed "knowingly", it awarded further additional damages in the amount of $75,000.00 plus an award of $40,000.00 for attorney's fees, for an aggregate judgment in

the amount of $674,076.68 together with taxable court costs and post-judgment interest.

The Debtors filed this voluntary Chapter 7 on October 6, 1994, and the Plaintiffs timely commenced this Adversary Proceeding titled "Complaint Objecting to the Dischargeability of Debt." The Complaint recites jurisdiction of this court under 28 U.S.C. § 1334 and 11 U.S.C. §§ 523 and 727. It states that Plaintiffs believe the judgment debt "... owed to Plaintiffs is an exception to dischargeability under 11 U.S.C. § 523(a)(2) and/or (4) and/or (6) because the debt is for money and arises from the false pretenses, false representations and fraud of the Debtor. The facts upon which this objection to dischargeability is based have already been determined by a jury in the 272nd Judicial District Court of Texas."[2]

To this end Plaintiffs filed their Motion For Summary Judgment in which they seek to establish the elements of their claim through the principles of collateral estoppel. This Motion was set for argument at which time it was presented with the parties' arguments along with copies of the State Court's charge to the jury, the jury findings and the State Court judgment. The Court also considered an affidavit of the State Court counsel for the Defendants. Although the Adversary Complaint recites § 727 as a jurisdictional statement, there are no allegations of any prepetition activity that thwart these Debtors' entitlement to a discharge generally and the Summary Judgment does not address that issue. The Summary Judgment also does not attempt to address the § 523(a)(4) exception to dischargeability. To the extent that the Motion For Summary Judgment seeks relief under either of these two grounds, it is denied.

The key issue before this court in this matter is whether the judgment predicated on the Texas DTPA Statute is sufficient by

1. Tex.Bus. & Com.Code Ann. §§ 17.41 et seq. (Vernon 1987).

2. 11 U.S.C. § 523(a)(2)(A) provides: "(a) discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." and § 523(a)(6) provides: "... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

itself to establish the elements necessary to enable a Plaintiff to prove that its debt is non-dischargeable within the meaning of 11 U.S.C. § 523(a)(2)(A) or (6).[3]

### A. Collateral Estoppel Generally

■ For reasons more fully stated herein, this court finds that the legal standard for establishing non-dischargeability under §§ 523(a)(2) and (6) are not co-extensive with the legal standard for establishing a violation of the Texas Deceptive Trade Practices Act tried in the state court. For this reason, collateral estoppel is inapplicable to the facts of this case.

Application of collateral estoppel in bankruptcy dischargeability litigation, where the prior judgment arises out of State Court proceedings, has been addressed by the federal courts numerous times and the basic principles are outlined in *In re Stowell,* 113 B.R. 322 (Bankr.W.D.Tex.1990). Generally stated, the rules appear to be as follows:

■ 1. Collateral estoppel principles do apply to dischargeability proceedings in bankruptcy court. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *RecoverEdge L.P. v. Pentecost, et al.,* 44 F.3d 1284, 1294 (5th Cir.1995); and *Daniels v. The Equitable Life Assurance Society of the United States,* 35 F.3d 210, 212 (5th Cir.1994).

■ 2. If the prior judgment was rendered by a State Court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect. *Marrese v. American Academy of Orthopaedic Surgery,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); and *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

3. Under Texas law, the doctrine of issue preclusion, or collateral estoppel, "bars relitigation of any 'ultimate issue' of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action."

*Daniels* at 213; *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984).

4. The Texas Supreme Court defines "ultimate issue" as:

Ultimate issues are those factual determinations submitted to a jury that are necessary to form the basis of a judgment. (Citations omitted) The term 'ultimate issue' does not refer to a cause of action or a claim. (Citations omitted).

*Tarter v. Metropolitan Saving and Loan Association,* 744 S.W.2d 926, 928 (Tex.1988).

5. The parties seeking to invoke the doctrine of issue preclusion or collateral estoppel must establish

(1) The facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.

*Bonniwell* at 818, citing *Benson v. Wanda Petroleum Corp.,* 468 S.W.2d 361 (Tex.1971), and Restatement (Second) Judgments § 27.

6. This doctrine has been described by a subsequent Texas Court decision:

Collateral estoppel, or issue preclusion, is more narrow that res judicata in that it only precludes the relitigation of identical issues of facts or law that were actually litigated and essential to the judgment in a prior suit. Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties.

*Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985); and *Wilhite v. Adams,* 640 S.W.2d 875 (Tex.1982).

7. The element of "actually and necessarily decided" has been amplified.

Under state law, collateral estoppel only precludes the relitigation of *identical issues of fact or law* which were actually

---

**3.** The complaint merely alleges § 523(a)(2). However, from the exhibits presented at the summary judgment hearing and from the complete text of the complaint, it is apparent that Plaintiffs rely solely on § 523(a)(2)(A).

litigated and essential to the prior judgment. (Emphasis added).

*Tarter* at 927. *Van Dyke* at 384.

The Restatement (Second) Judgments § 27 comment (I) (1982) provides in part 'If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.' The rationale for this rule is that a determination in the alternative may not have been as rigorously contested as it would have been if necessary to the result and the losing party may be dissuaded from appealing one determination because of the likelihood that the other will be upheld.

*Eagle Properties Limited v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1990). (The subject matter of the two suits may be different as long as the requirements for collateral estoppel are met.) *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir.1994).

8. Also, courts have readily perceived that for purposes of preclusion, issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same. *RecoverEdge L.P. v. Pentecost, et al.*, 44 F.3d 1284, (5th Cir.1995), citing 18 Wright, Miller & Cooper, Fed.Prac. & Pro. § 4417, at 165; and *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354–55 (5th Cir.1991).

In *Brister*, the 5th Circuit noted the plaintiff had sued on two theories, a Jones Act violation and unseaworthiness under general maritime law. It recognized that although broad-based and liberal, the Jones Act implicated a causation requirement while "... unlike a Jones Act claim, Unseaworthiness under general maritime law is predicated without regard to fault or the use of due care ... shipowner has absolute, non-delegable duty to provide a seaworthy vessel." Thus, the two legal standards were held to be different and collateral estoppel found not to apply.

■ 9. In defining the issues that were actually litigated in the first proceeding, the second court looks to the first court's charge to the jury, its findings on the special issues, and the first court's judgment. *RecoverEdge* at 1291.

**B. Dischargeability Standards Under § 523(a)(2)(A) and (6)**

■ To determine if the requisite elements are present for the application of collateral estoppel, it is helpful to first restate the legal standards required to be established before a debt is ruled to be non-dischargeable. There is no dispute that the Plaintiff bears the burden of proof by a preponderance of the evidence to establish that an exception to discharge applies. *Grogan v. Garner*, 498 U.S. 279, 289–91, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

■ 1. *Section 523(a)(2)(A):* A cause of action for fraud will exist under § 523(a)(2)(A) when a debtor makes promises of current or future action which, at the time they were made, he had no intention of fulfilling. In order to succeed on his legal theory, the objecting party must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained losses as a proximate result of the representations. *Matter of Bercier*, 934 F.2d 689 (5th Cir.1991).

In order for ... a representation to be a false representation or false pretense under 523(a)(2), the 'false representations and false pretenses [must] encompass statements that falsely purport to depict current or past facts.' *Bercier* at 692.

There is little doubt that the standard is the same for any debt described in § 523(a)(2)(A). As a general matter, § 523(a)(2)(A) "contemplates *frauds* involving moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient." *RecoverEdge* at 1292, citing *In re Allison*, 960 F.2d 481, 483 (5th Cir.1992); *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992) ("*debts* falling within § 523(a)(2)(A) are debts obtained by *fraud* involving moral tur-

pitude or intentional wrong, *and any misrepresentations must be knowingly and fraudulently made.*") (Emphasis added).

Referring to the Collier's discussion in separate sections of "false pretenses" or "false representations", *RecoverEdge* at page 1292, footnote 16 states:

> Congress added 'actual fraud' to the fraud exception to discharge when it enacted the Bankruptcy Act of 1978, Pub.L. No. 95–598 § 523(a)(2)(A), 92 Stat. 2549, 2590 (1978). Section 17(a)(2) of the former Bankruptcy Act of 1898 provided in relevant part: 'a discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... are liabilities for obtaining money or property by false pretenses or false representations....' 11 U.S.C. § 35(a)(2) (repealed 1978). The commentary in Collier on bankruptcy suggests that the addition of 'actual fraud' simply clarifies the limited scope of the fraud exception: the addition of the words 'or actual fraud' probably makes no change in the law as it existed prior to enactment of the [Bankruptcy Act of 1978] because false pretenses and representations were construed to mean act involving moral turpitude or intentional wrong.... In any event, § 523(a)(2)(A) was intended to codify case law as expressed in *Neal v. Clark* [95 U.S. 704, 24 L.Ed. 586 (1877)] which interpreted 'fraud' to mean actual or positive fraud rather than fraud implied by law. Collier 3 on Bankruptcy, ¶ 523.08[5] at 523–58.

*RecoverEdge* also observes that other circuits have applied a uniform standard resembling the actual fraud test of the 5th Circuit to all debts falling under § 523(a)(2)(A), citing *In re Britton*, 950 F.2d 602, 604 (9th Cir.1991); *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987); and *In re Maurice*, 21 F.3d 767, 774 (7th Cir.1994).

2. *Section 523(a)(6):* A cause of action for willful and malicious injury will also be excepted from discharge. The controlling standard adopted by the 5th Circuit to determine whether conduct is "willful and malicious" within the meaning of § 523(a)(6) is:

> In order to fall within the exception of § 523(a)(6), an injury to an entity or property must have been willful and malicious. An injury ... may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will. The word "willful" means "deliberate or intentional", a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

*Matter of Quezada*, 718 F.2d 121, 123 (5th Cir.1983), cert. denied 467 U.S. 1217, 104 S.Ct. 2662, 81 L.Ed.2d 368 (1984). See also *Seven Elves v. Eskenazi*, 704 F.2d 241, 245 (5th Cir.1983) ("We have defined 'willful and malicious' under § 523(a)(6) to mean 'without just cause or excuse'. Willful means intentional and malicious adds the absence of just cause or excuse.") (Citations omitted); see also *In re Sims*, 148 B.R. 553 (Bankr. E.D.Ark.1992).

## C. State Court Deceptive Trade Practices Act

Attached to this opinion as Appendix A is the state court's charge to the jury along with the resultant jury findings. Appendix B is a copy of the resulting state court judgment. The Plaintiffs in state court submitted issues arising under the Texas Deceptive Trade Practices Act, which in question number one inquired about certain misrepresentations, in question number two inquired about unconscionable acts and in question number three inquired about breach of express or implied warranties. Plaintiffs also sought additional damages through a separate issue to determine whether any of the deceptive trade practice violations were done "knowingly", as submitted in question number nine. No party in this summary judgment proceeding has contended that an act of simple negligence constitutes a non-dischargeable debt or that a breach of express or implied warranty constitutes a non-dischargeable debt. Therefore, this court will first examine the legal standards that state courts look to in a deceptive trade practice action for unconscionable acts, knowing viola-

tions, and the laundry list of deceptive acts described in § 17.46(b) of the Deceptive Trade Practices Act as actually submitted in the prior state court action. Generally, § 17.46(b)(5) covers certain representations that "goods or services have ... characteristics ... which they do not have" and § 17.46(b)(7) covers representations that "goods or services are of a particular standard or quality, if they are of another." These two laundry list items were submitted to the jury in question number one. Also, § 17.45(5) of the DTPA defines "unconscionable action or course of action" and § 17.50(a)(3) provides relief for the consumer where an unconscionable action or course of action was committed. Further, § 17.45(9) defines "knowingly" and, where violations of the DTPA are found to have occurred "knowingly", § 17.50(b) allows for additional damages. Although a breach of express or implied warranty was not argued to be a summary judgment issue under § 523(a)(2)(A) or (6) to the extent the jury found such action to be "unconscionable" or to have been "knowingly done", it will be included hereafter.

The real question before this court is whether the same elements and legal standards were utilized by the prior court as are required to be demonstrated to this court in order to show that the judgment debt is excepted from discharge. The answer is they are not, at least for summary judgment purposes in this case.

### Violations of DTPA § 17.46(b)(5) or (7)

State Courts have clearly ruled that the primary purpose of the DTPA is to provide consumers with a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit. Therefore, the DTPA does not represent a codification of the common law. *Smith v. Baldwin,* 611 S.W.2d 611 (Tex. 1980); *Camden Machinery & Tool Inc. v. Cascade,* 870 S.W.2d 304 (Tex.App.—Fort Worth 1993, no writ) (the DTPA has done away with many defenses which precluded any recovery for fraud).

■ More importantly, Texas case law shows that liability under § 17.46(b)(5) and

(7) do not require that the defendant have made a misrepresentation knowingly, intentionally or even with knowledge that the representation is false. See, e.g., *Parks v. U.S. Home Corp.,* 652 S.W.2d 479 (Tex. App.—Houston [1st Dist] 1983, writ dism'd) (with respect to subdivision (b)(5), intentional misrepresentation is not required to show a violation); also *R.R.T.M. Restaurant Corp. v. Keeping,* 766 S.W.2d 804 (Tex.App.—Dallas 1988, writ denied); *Smith v. Baldwin,* 611 S.W.2d 611 (Tex.1980) (subdivision (b)(7) contains no requirement of proof of intent to misrepresent, therefore no requirement of proof of intentional misrepresentation is required for sanctions of the Deceptive Trade Practices Act to be imposed under this subdivision); *Jim Walter Homes, Inc. v. Mora,* 622 S.W.2d 878 (Tex.App.—Corpus Christi 1981, no writ) (provision of subdivision (b)(7) of this section [17.46(b)] does not require intent or knowledge before a violation may be found); *Camden Machinery & Tool, Inc.,* supra (one can be held liable for facts he does not know because the element of scienter need not be proved under DTPA).

■ The general objective of subdivisions (5) and (7) of [§ 17.46(b)], which prohibit representing that a good has characteristics, uses or benefits which it does not have, and prohibits representing that a good is of a particular standard ... or quality if it is of another, is to insure that descriptions of goods and services offered for sale are accurate. *Pennington v. Singleton,* 606 S.W.2d 682 (Tex.1980).

### Unconscionable Acts § 17.45(5), § 17.50(a)(3)

■ Where a seller commits an "unconscionable action or course of action," he may be held liable under the DTPA pursuant to § 17.45(5) and § 17.50(a)(3). However, a consumer does not need to prove that the seller intended to deceive in order to maintain a cause of action for unconscionable conduct. *Teague v. Bandy,* 793 S.W.2d 50 (Tex. App.—Austin 1990, writ denied). Further, proof under this provision does not require proof that the defendant acted intentionally, knowingly or with conscious indifference. *City of Austin v. Houston Lighting and*

*Power Company,* 844 S.W.2d 773 (Tex. App.—Dallas 1992, writ denied); *Miller v. Soliz,* 648 S.W.2d 734 (Tex.App.—Corpus Christi 1983, no writ) (intent is not an element of a violation of provisions relating to unconscionable action or cause of action, therefore defense of good faith or good faith error is not available).

### Deceptive Acts Knowingly Done— § 17.45(9), § 17.50(b)

The definition of "knowingly" sets out the standard by which multiple damages may be awarded for violations of the DTPA. The courts of Texas have rejected any requirement that "knowingly" as defined in § 17.45(9) is the legal equivalent of "willful" or "willfulness". *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 117 (Tex.1984); *Ingram Barge Co. v. Trifinery, Inc., et al.,* 1990 WL 303913 (Tex.Dist.Court, Harris Co., 1990); *Natland Corp. v. Baker's Port, Inc.,* 865 S.W.2d 52 (Tex.App.—Corpus Christi 1993, writ denied) (acts of fraud and knowing violation of DTPA possessed different elements).

### D. Actual Findings by State Court with Respect to Particular Debtor–Defendants

The above discussion shows that a defendant may be found guilty of violating § 17.46(b)(5) or (7) even though there is no knowledge of the falsity of any representation at issue and even without evidence of intent to misrepresent. A violation of § 17.45(5) and § 17.50(a)(3) can be established without any showing of intent to deceive. Further, a violation of § 17.46(a) and § 17.50(b) can be established even though the actions of the defendant need not be willful.

In addition to the different legal standards the state court's charge is particularly problematic with respect to collateral estoppel and dischargeability. Each debtor is entitled to a discharge in bankruptcy. The burden of proving that a debt incurred by a specific debtor is excepted from discharge is on the plaintiff. Plaintiff here relies solely on the state court jury findings, yet, the charge, as delivered to the jury and shown in Appendix

A defined "Defendants" to mean "either Darrell Bairrington, Jo Ann Bairrington, or both." Question one asks "did the Defendants engage in any false, misleading, or deceptive act or practice that was a producing cause of damage to the Plaintiffs?" It defines producing cause and then gives eight different alternative representations that it defines to be "false, misleading, or deceptive acts or practices." The jury was not required to indicate which of the eight different defined acts it found to have been committed or by which defendant the act was committed. As stated, question number one could have been answered yes if only one of the two defendants committed only one of the eight stated representations.

Question two inquired whether the "Defendants" engaged in any "unconscionable action or course of action." Again, as defined in the DTPA § 17.45(5), there are two definitions for "unconscionable action or course of action". Using the definition of "Defendants" as given in the court's charge and both of the alternative choices submitted to the jury, the "yes" answer could have been rendered if only one of the two defendants did only one of the two alternative definitions of "unconscionable acts or practices". Question three inquired whether the "Defendants breached an express or implied warranty". As with the prior questions, it only required one of the two defendants to have committed a breach of either an express or an implied warranty in order to receive the "yes" answer given by the jury. In question nine the jury was instructed that if they answered yes to question one, two or three, they should determine whether the Defendants' actions were done "knowingly". Again, it is possible that only one of the two Defendants had to commit only one of the three violations in order to answer this question in the affirmative. It should also be noted that question number four inquired whether the "Defendants" committed negligence. The definition given is simple negligence. Apparently, no motion for judgment on the verdict was made before the prior court signed the judgment attached hereto as Appendix B. Therefore, there is no way this court can determine which of the two Defendants committed any

of the various actions complained of in question number one, two or three.

### Conclusions

It is apparent from the reading of the cases cited herein that a plaintiff need not prove common law fraud or willful acts in order to establish a "deceptive trade practice" or "deceptive act". A "deceptive trade practice" or "deceptive act" can clearly be established without proof that the Defendant knew his or her representation to have been false or without proof that the representation was intentionally made. The element of fraud and a knowing violation of the DTPA possess different elements. *Natland Corp.,* supra. Intent to deceive the consumer is not required in order to maintain a cause of action for unconscionable conduct or for representing that goods or services have characteristics, uses or benefits that they do not have. *Teague v. Bandy,* supra. Therefore, a violation of the Texas Deceptive Trade Practices Act, at least with respect to unconscionable actions, misrepresentations based on subdivision 17.46(b)(5) and (7) or "knowing violations", can be founded on behavior that lacks all of the required elements necessary to support a finding of non-dischargeability under §§ 523(a)(2)(A) or (6).

This does not mean that conduct that constitutes actual fraud under 523(a)(2)(A), or perhaps in an appropriate circumstance, willful and malicious acts under § 523(a)(6), cannot also constitute a deceptive trade practice within the meaning of the DTPA. Without question, actual fraud or willful and malicious acts perpetrated in the course of trade or commerce can be a deceptive trade practice or deceptive act. Where such misconduct on which a DTPA judgment is founded amounts to actual fraud, the judgment debt would be excepted from discharge by § 523(a)(2)(A). Here, however, collateral estoppel does not apply because the elements of a deceptive trade practice or deceptive act are not identical to actual fraud or to a willful and malicious act. There are no specific findings on the required elements of either of these two excepted debts which were made by the prior court. Without fraud having been pleaded, even if submitted and found, the missing elements would not have been necessary for a DTPA judgment.

For the above reasons the Plaintiffs' Motion for Summary Judgment is DENIED. A separate Scheduling Order will be issued to set this matter back on the court's calendar for trial on the merits. A separate order of even date herewith will be issued to effectuate the court's decision.

**IT IS SO ORDERED.**

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

On March 15, 1995 the court heard the Motion for Summary Judgment filed by the Plaintiffs in the above-styled and numbered adversary proceeding. After hearing the arguments of counsel, the court took the matter under advisement. Based on the Memorandum opinion entered of even date herewith, the court has determined that the Motion for Summary Judgment should be denied. It is therefore

ORDERED that the Plaintiffs Motion for Summary Judgment is hereby DENIED.

IT IS SO ORDERED.

# APPENDIX A

## EXEMPLIFICATION

**STATE OF TEXAS**

**COUNTY OF BRAZOS**

I, Marc Hamlin, Clerk of the District Court of Brazos County, Texas, certify and attest that the following ___*19*___ pages of typewritten matter is a true and complete copy of the Court's Charge to the Jury, Jury Verdict and Judgment from the official records entered in Kuppusamy Ragupathi and Rohini Ragupathi vs. Darrell Bairrington and Jo Ann Bairrington d/b/a Bairrington Homes; Cause No. 35,383-272 as the same now appears of record in my office, as set out above, and that I am in lawful possession as the official custodian of these records.

IN TESTIMONY WHEREOF, witness my official signature together with the seal of the Court this *26th* day of ___*January*___, 1995.

> Marc Hamlin,
> Clerk of the District Court
> Brazos County, Texas

By: *Christine Williams*
*Deputy*

**STATE OF TEXAS**

**COUNTY OF BRAZOS**

I, John Delaney, Judge of the 272nd District Court of Brazos County, Texas, certify that Marc Hamlin, whose name appears to be signed to the above certificate is and was at the time of signing, the Clerk of the Court mentioned, having custody of its records, and is the person to attest to the foregoing and to make the certificate, and that the same is in due and proper form.

Given under my hand officially and authenticated by the seal of my office, this *26th* day of ___*January*___, 1995.

*John Delan*

**JUDGE**

**STATE OF TEXAS**

**COUNTY OF BRAZOS**

I, Marc Hamlin, Clerk of the District Court of Brazos County, Texas, certify that *John Delaney*, whose name is signed to the above and foregoing certificate, is and was at the time of signing the same the Judge of the 272nd District Court mentioned, and as such was the proper person to make the certificate, and that the same is in due and proper form.

IN TESTIMONY WHEREOF, witness my official signature together with seal this *26th* day of ___*January*___, 1995.

> Marc Hamlin,
> Clerk of the District Court
> of Brazos County, Texas

By: *Kay Dene, Deputy*

CAUSE NO. 35,383–272

IN THE DISTRICT COURT OF

BRAZOS COUNTY, TEXAS

272ND JUDICIAL DISTRICT

Kuppusamy Ragupathi and
Rohini Ragupathi

vs.

Bairrington Homes, Inc. Darrell Bairrington
and Jo Ann Bairrington d/b/a
Bairrington Homes

CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you in the form of specific questions that you are to answer on the basis of the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions that have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice, or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern your-selves with the effect of your answers. If you attempt on your own to determine the final outcome of the case by the answers you give, you may unknowingly cause an unjust end result. That is because the judge will use each of your separate answers in connection with each other and with rules of law, which may be unknown to you, in order to render a final judgment. To perform that task properly, the judge needs to depend on your answers being independently accurate findings of the jury, not altered to produce a desired result.

5. You will not decide an issue by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if the others will agree to answer another question another way.

6. You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys, and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other juror who observes a violation of the court's instructions shall immediately warn the violator and caution him or her not to do so again.

After you retire to the jury room, you will select your own presiding juror.

It is the duty of the presiding juror:

1. to preside during your deliberations;

2. to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge;

3. to write out and hand to the bailiff any communication concerning the case which you desire to have delivered to the judge;

4. to vote on the questions;

5. to write your answers to the questions in the spaces provided; and

6. to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if it is less than unanimous.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of this Court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the questions which you are required to answer under the instructions of the judge, and the presiding juror has placed your answers in the spaces provided, and signed the verdict as presiding juror or obtained the signatures, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into Court with your verdict. The judge will examine the verdict for completeness and then read the answers in open court.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Date: April 12, 1994

/s/ John Delaney
JOHN DELANEY,
JUDGE PRESIDING
272ND JUDICIAL DISTRICT COURT
BRAZOS COUNTY, TEXAS

*DEFINITIONS AND INSTRUCTIONS*

Answer "Yes" or "No" unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." The answer to any question requiring an answer other than "Yes" or "No" must be based on a preponderance of the evidence.

"PREPONDERANCE OF THE EVIDENCE" means evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

"DEFENDANTS" means either Darrell Bairrington, Jo Ann Bairrington, or both.

"PLAINTIFFS" means either Kuppusamy Ragupathi, Rohini Ragupathi, or both.

QUESTION NO. 1

Did the Defendants engage in any false, misleading, or deceptive act or practice that was a producing cause of damage to the Plaintiffs?

"**Producing cause**" means a cause, including a contributing cause, that in a natural sequence, produced the damages, if any. There may be more than one producing cause.

"**False, misleading or deceptive act or practice**" means any of the following:

Representing that the site preparation would have characteristics that it did not have; or

Representing that the foundation would have characteristics that it did not have; or

Representing that the construction of the house would have characteristics that it did not have; or

Representing that their homebuilding services would have characteristics that they did not have; or

Representing that the site preparation would be of a particular standard or quality when it was of another; or

Representing that the foundation would be of a particular standard or quality when it was of another; or

Representing that the construction of the house would be of a particular standard or quality when it was of another; or

Representing that the homebuilding services would be of a particular standard or quality when they were of another.

Answer "yes" or "no"

Answer <u>yes</u>

QUESTION NO. 2

Did the Defendants engage in any unconscionable action or course of action toward the Plaintiffs in the construction of the house, that was a producing cause of damage to the Plaintiffs?

An **"unconscionable action or course of action"** is an act or practice that, to a person's detriment, either:

a) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

b) results in a gross disparity between value received and money paid.

See the definition of **"producing cause"** under Question 1.

Answer "yes" or "no"

ANSWER <u>yes</u>

QUESTION NO. 3

Do you find that the Defendants breached an express or implied warranty, and that the breach, if any, was a producing cause of damage to the Plaintiffs?

**EXPRESS WARRANTIES:**

Any affirmation of fact, description, or promise made by defendants that relates to the house or construction services and becomes part of the basis of the bargain creates an "express warranty" that the house shall conform to the affirmation, description, or promise.

It is not necessary to the creation of an express warranty that the defendants used formal words such as "warrant" or "guarantee" or that they have a specific intention to make a warranty.

**IMPLIED WARRANTIES:**

The law places upon the Defendants an obligation to construct the house in a **good and workmanlike** manner. This obligation is an **"implied warranty".**

**"Good and workmanlike"** means that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work.

Answer "yes" or "no"

ANSWER: <u>yes</u>

QUESTION NO. 4

Was the negligence, if any, of the Defendants a proximate cause of any construction defects in the Plaintiffs' house?

**"NEGLIGENCE"**—**"negligence"** in this question means failure to use ordinary care, that is, failing to do that which a homebuilder of ordinary prudence would have done under the same or similar circumstances, or doing that which a homebuilder of ordinary prudence would not have done under the same or similar circumstances.

"**Ordinary care**" means that degree of care that would be used by a homebuilder of ordinary prudence under the same or similar circumstances.

"**Proximate cause**" means that cause which, in a natural and continuous sequence, produces a condition or event, and without which cause such condition or event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a homebuilder using ordinary care would have foreseen that the condition or event, or some similar condition or event might reasonably result therefrom. There may be more than one proximate cause of a condition or event.

"**Construction Defect**" means a matter concerning the design or construction of a new residence on which a person has a complaint against a contractor. It may include any physical damage to the residence proximately caused by a construction defect.

Answer "yes" or "no"

Answer <u>yes</u>

## QUESTION NO. 5

Was the negligence, if any, of the Plaintiffs a proximate cause of any construction defects in the Plaintiffs' house?

"**NEGLIGENCE**"—"**negligence**" in this question means failure to use ordinary care, that is, failing to do that which a homeowner of ordinary prudence would have done under the same or similar circumstances, or doing that which a homeowner of ordinary prudence would not have done under the same or similar circumstances.

"**Ordinary care**" means that degree of care that would be used by a homeowner of ordinary prudence under the same or similar circumstances.

"**Proximate cause**" means that cause which, in a natural and continuous se-

quence, produces a condition or event, and without which cause such condition or event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a homeowner using ordinary care would have foreseen that the condition or event, or some similar condition or event might reasonably result therefrom. There may be more than one proximate cause of a condition or event.

See the definition of "construction defect" in Question No. <u>4</u>.

Answer "yes" or "no"

Answer <u>no</u>

If, in the answers to Questions 4 and 5 you have found that the negligence of the Defendants and the Plaintiffs proximately caused any construction defects, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 6

What percentage of the negligence that caused any construction defects do you find to be attributable to each of those found by you, in your answers to Questions 4 and 5, to have been negligent?

The percentages you find must total 100 percent. The negligence attributable to those named below is not necessarily measured by the number of acts or omissions found.

| | | |
|---|---|---|
| a. Defendants | _____ | % |
| b. Plaintiffs | _____ | % |
| Total | 100 | % |

If you have answered Question Nos. 1, 2, 3, or 4 "yes", then answer Question No. 7. If not, do not answer this question.

## QUESTION NO. 7

Find the amount of money, if any, if paid to the Plaintiffs, that would reasonably and fairly compensate them for their damages, if any.

You are to consider each element of damage listed below separately, so as not to include damages for one element in any other element. Answer separately in dollars and cents, if any, with respect to each of the following elements:

a.  the reasonable and necessary cost to repair the foundation

$15,880.00

b.  the reasonable and necessary cost to repair the house (other than the foundation)

$19,300.00

c.  the reasonable and necessary cost of engineering and architectural services in connection with repairs to the house or foundation

$6,800.00

d.  the permanent reduction in market value of the house after repair

$120,000.00

In answering the next four questions, you are instructed that **mental anguish** includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, anger, resentment, indignation, embarrassment, despair or public humiliation.

e.  Mental anguish of Rohini Ragupathi in the past.

$90,000.00

f.  Mental anguish of Kuppusamy Ragupathi in the past.

$90,000.00

g.  Mental anguish of Kuppusamy Ragupathi that in reasonable probability he will suffer in the future.

$45,000.00

h.  Mental anguish of Rohini Ragupathi that in reasonable probability she will suffer in the future.

$45,000.00

## QUESTION NO. 8

What sum of money do you find to be the reasonable and necessary attorney's fees for the services rendered by the Plaintiffs' attorneys in this case?

Answer in dollars and cents, if any:

$40,000.00

### BENEFIT OF THE BARGAIN

What sum of money, if any paid now in cash do you find from a preponderance of the evidence to be the benefit of the bargain of the parties?

Answer in Dollars and cents, if any.

Benefit of the bargain means the difference between the value of the home as represented and the actual value of the home as received.

Answer: $_____

OR

What was the difference, if any, in the value of the house as represented and the actual value of the house as received?

Answer in Dollars and cents, if any.

Answer: $_____

Refused.

John Delaney

4/12/94

If you have answered Question Nos. 1, 2, or 3 "yes", then answer Question No. 9. If not, do not answer this question.

## QUESTION NO. 9

Do you find that any of the actions of the Defendants that you have found in any of the foregoing questions was done **knowingly?**

"Knowingly" means actual awareness of the breach of warranty or falsity, deception, unconscionability or unfairness of the act or practice giving rise to the Plaintiffs' claim, if any, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Answer "yes" or "no"

ANSWER: yes

If you have answered the foregoing question, "yes", then answer Question No. 10. If not, do not answer this question.

QUESTION NO. 10

What sum of money, if any, do you find should be awarded against the defendants as additional damages to plaintiffs?

"**Additional damages**" means an amount which you may, in your discretion, award as an example to others or as a penalty or by way of punishment or as compensation for the inconvenience and expense of litigation (except attorney's fees and court costs) in addition to any amount which may be found by you as actual damages.

In determining the amount, you may consider:

(1) the nature of the conduct

(2) the character of the conduct involved

(3) the degree of culpability of the wrong-doer

(4) the situation and sensibilities of the parties concerned

(5) the extent to which such conduct offends a public sense of justice and propriety and

(6) the size of an award needed to deter similar conduct in the future.

Answer in dollars and cents, if any:

$75,000.00

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated and return them into Court as our verdict.

(To be signed by the presiding juror if unanimous)

/s/ RWA
PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous)

## APPENDIX B

## JUDGMENT

On April 5, 1994, this case came on to be heard and was called for trial. Kuppusamy Ragupathi and Rohini Ragupathi, Plaintiffs, appeared in person and by their attorney of record and announced ready for trial. Darrell Bairrington and Jo Ann Bairrington, Defendants, appeared in person and by attorney of record and announced ready for trial. A jury having been previously demanded, all questions of fact was submitted to a jury consisting of twelve (12) qualified jurors which were duly impaneled and the case proceeded to trial.

At the conclusion of the evidence, the Court submitted the questions of fact on the case to the jury. The charge of the court and the verdict of the jury are incorporated for all purposes by reference. Because it appears to the Court that the verdict of the jury was for the Plaintiffs and against the Defendants, judgment should be rendered on the verdict in favor of the Plaintiffs and against the Defendants.

IT IS THEREFORE ORDERED by the Court that Kuppusamy Ragupathi and Rohini Ragupathi have and recover actual damages from Darrell Bairrington and Jo Ann Bairrington, jointly and severally, the following sums:

$15,880.00 for the costs to repair the foundation;

$19,300.00 for the cost to repair the house other than the foundation;

$6,800.00 for the cost of engineering and architectural services in connection with the repairs to the house or foundation;

$120,000.00 for the permanent reduction in market value of the house after repair;

$90,000.00 for the mental anguish of Rohini Ragupathi in the past;

$90,000.00 for the mental anguish of Kuppusamy Ragupathi in the past;

$45,000.00 for the mental anguish of Rohini Ragupathi in the future;

$45,000.00 for the mental anguish of Kuppusamy Ragupathi in the future;

The Court further finds that pre-judgment interest should be computed on the foregoing actual damages at the rate of 10% simple interest per annum commencing on June 26, 1991, the date this suit was filed. Interest on

the combined actual damages up until the date of judgment is $125,096.68.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Kuppusamy Ragupathi and Rohini Ragupathi recover of and from Darrell Bairrington and Jo Ann Bairrington the sum of $557,076.68 as actual damages and pre-judgment interest.

The Court further finds that this suit was brought pursuant to the Deceptive Trade Practices—Consumer Protection Act and that the Plaintiffs are further entitled to two times that portion of the actual damages that does not exceed $1,000.00. THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Kuppusamy Ragupathi and Rohini Ragupathi recover of and from Darrell Bairrington and Jo Ann Bairrington jointly and severally the further sum of $2,000.00.

The jury found "additional damages" in favor of the Plaintiffs and against the Defendants in the amount of $75,000.00 and the Plaintiffs are entitled to judgment against the Defendants in that additional amount.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Kuppusamy Ragupathi and Rohini Ragupathi recover of and from Darrell Bairrington and Jo Ann Bairrington, jointly and severally, the additional sum of $75,000.00.

The jury found reasonable and necessary attorney's fees in favor of the Plaintiffs in the amount of $40,000.00 and the Plaintiffs are entitled to judgment against the Defendants for the reasonable and necessary attorney's fees in that amount.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Kuppusamy Ragupathi and Rohini Ragupathi recover of and from Darrell Bairrington and Jo Ann Bairrington, jointly and severally, the additional sum of $40,000.00.

The Court finds that the total damages to be awarded in favor of the Plaintiffs and against the Defendants, jointly and severally, is $674,076.68 and it is so ORDERED, ADJUDGED AND DECREED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the entirety of this judgment in the amount of $674,076.68 together with taxable court costs shall earn interest at the rate of 10% per annum, compounded annually.

All costs of court expended or incurred in this cause are adjudged against Darrell Bairrington and Jo Ann Bairrington jointly and severally. All writs and processes for the enforcement and collection of this judgment or the costs of court shall issue as necessary. All other relief not expressly granted herein is denied.

SIGNED this 18th day of May, 1994.

    JOHN DELANEY
    JUDGE PRESIDING