In re Robert BRITTON, Debtor.

Robert BRITTON, Defendant–Appellant,

v.

Mary PRICE, Plaintiff–Appellee.

No. 90–56027.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 1991.

Decided Dec. 6, 1991.

Charles B. Harris, San Diego, Cal., for defendant-appellant.

John E. Yeager, San Diego, Cal., for plaintiff-appellee.

Before FLETCHER, D.W. NELSON and BRUNETTI, Circuit Judges.

FLETCHER, Circuit Judge:

Robert Britton, the debtor, appeals from the decision of the Bankruptcy Appellate Panel ("BAP") affirming in part the bankruptcy court's holding that a judgment against him for fraud obtained by Mary Price was nondischargeable. Britton argues that there is insufficient evidence to support the bankruptcy court's finding that his conduct constituted fraud, for the purposes of 11 U.S.C. § 523(a)(2)(A) ("Section 523(a)(2)(A)"), which excepts from discharge debts for money or property obtained by a fraud or false representations, and that there is also insufficient evidence to support the finding that his conduct caused "willful and malicious injury," making the debt incurred by such injury nondischargeable under 11 U.S.C. § 523(a)(6) ("Section 523(a)(6)"). Britton further argues that, even if there is evidence to support a finding of willful and malicious injury, the punitive damages portion of the judgment is dischargeable. Price contends Britton's appeal is frivolous, and asks for an award of attorney's fees.

We affirm the BAP's decision, but decline to award attorney's fees.

## BACKGROUND

In 1977, Robert Britton was employed as an office manager and consultant by Dr. Cavanaugh at the Academy of Cosmetic Surgery Medical Group.

In July, 1977, Mary Price read an advertisement about the Academy's cosmetic surgery procedures. Price made an appointment at the Academy for a consultation about a lipectomy (removal) of abdominal fat. At the Academy, Price met with a nurse/receptionist and with Britton. Britton and Price discussed arrangements for financing the procedure; Britton subsequently made all necessary arrangements for Price to obtain financing from a local finance company. Britton also gave Price a document about the procedure that had been prepared by Dr. Cavanaugh for use as part of the cosmetic surgery sales presentation. According to Price, Britton wore a name tag that identified him as a doctor, and was addressed as "doctor" by the nurse.

Price was then given a physical examination, at which Britton was present. The nurse was also present at the examination. Price testified that during the examination she revealed her abdomen, and that Britton touched the area of her stomach where there was excess fat and showed her where the incision would be made.

Dr. Cavanaugh performed the surgical procedure on Price with Britton present. Britton arranged for Price's transfer to Hillside Convalescent Hospital after the procedure. According to Price, she was in considerable pain after the operation. At the hospital, tubing was found in Price's body at the site of the incision. Within three days of the procedure, the area of the incision became infected; Price ultimately required corrective surgery.

Price filed suit in state court alleging medical malpractice by Dr. Cavanaugh and fraud by both Cavanaugh and Britton. Dr. Cavanaugh did not appear at the trial and judgment was entered against him on both claims. The jury awarded $50,000 against Dr. Cavanaugh for medical negligence and $25,000 in actual damages for fraud and $275,000 for punitive damages against both Britton and Dr. Cavanaugh.

Britton subsequently filed a chapter 7 bankruptcy petition, and Price filed a complaint in bankruptcy court for a determination that Britton's judgment debt to her was nondischargeable under section 523.

The bankruptcy court held a hearing to determine the dischargeability of the debt. It found that Britton's misrepresentation of himself as a doctor constituted fraud within the meaning of section 523(a)(2)(A) and that the judgment was therefore nondischargeable under that section. The bankruptcy court found that the judgment was

also nondischargeable under section 523(a)(6).

Britton appealed to the BAP, arguing that there was insufficient evidence to support the findings of fraud and of willful and malicious injury, and that sections 523(a)(2)(A) and 523(a)(6) did not except from discharge the punitive damages portion of the judgment.[1] The BAP reversed the bankruptcy court as to the dischargeability of punitive damages under section 523(a)(2)(A), relying on its recent decision in *Ellwanger v. McBroom (In re Ellwanger)*, 105 B.R. 551 (Bankr.9th Cir.1989), that that subsection bars discharge only of actual damages. The BAP affirmed as to the other issues.

## STANDARD OF REVIEW

This court and the BAP review the bankruptcy court's conclusions of law de novo. Findings of fact are upheld unless they are clearly erroneous. *Rubin v. West (In re Rubin)*, 875 F.2d 755, 758 (9th Cir.1989).

### I. Evidentiary Issues

#### A. Finding of Fraud within the meaning of section 523(a)(2)(A)

Section 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud ...

11 U.S.C. § 523(a)(2)(A).

■ The Ninth Circuit has employed a five-part test for determining when a debt is nondischargeable under section 523(a)(2)(A). The creditor must show that:

(1) the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations;

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*Houtman v. Mann (In re Houtman)*, 568 F.2d 651, 655 (9th Cir.1978) (emphasis omitted) (quoting *Public Fin. Corp. of Redlands v. Taylor (In re Taylor)*, 514 F.2d 1370, 1373 (9th Cir.1975)). In *Houtman*, the court was determining dischargeability under the predecessor to section 523(a)(2)(A), section 17(a)(2) of the Bankruptcy Act.

The BAP acknowledged there were inconsistencies in Price's testimony and conflicts between the testimony of Price and Britton's version of the events. It nonetheless found that the bankruptcy court's findings with respect to the debtor's fraudulent conduct were not clearly erroneous.

■ On this appeal, Britton focuses on the element of proximate causation. He argues that the injury Price suffered was not the *"proximate* result" of his misrepresentation. The "clearly erroneous" standard of appellate review applies to findings of proximate cause, "even though the finding may depend to some extent upon law." *Rubin*, 875 F.2d at 758.

Proximate cause

is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that they depend on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.

W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 42 at 273 (5th ed. 1984).

---

1. Britton also argued that the bankruptcy court erred in admitting evidence as to Britton's examination of other female patients. The BAP held that the admission of such character evidence was harmless error.

■] On this issue, the bankruptcy judge's findings were not clearly erroneous. Malpractice can be seen as a foreseeable consequence of any medical procedure, including plastic surgery; Britton employed fraud to convince Price to submit to surgery. Moreover, on these facts, there appears to be no policy argument for limiting the extent of Britton's liability for Price's injuries. Britton cannot escape the consequences of his intentional misconduct by arguing that the injury Price suffered was not the proximate result of the fraud he committed.

B. Finding of "willful and malicious injury" within the meaning of section 523(a)(6)

1. Required showing under section 523(a)(6)

■] Section 523(a)(6) provides that a debt for "willful and malicious injury by the debtor" will not be discharged. 11 U.S.C. § 523(a)(6). "Willful," in this context, means "deliberate or intentional." H.R.Rep. No. 595, 95th Cong., 1st Sess. 365, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6320–21; *see Impulsora del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440, 1443 (9th Cir.1986). Thus, the creditor must show the debtor acted intentionally. The intent required is intent to do the act at issue, not intent to injure the victim. *C.I.T. Fin. Serv., Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989) ("The 'willful' element is straightforward. It simply addresses whether the debtor intentionally performed the basic act complained of.").

■ To prove malice, the creditor must make a further showing. The creditor need not prove that the debtor specifically intended to injure the creditor. *See Cecchini*, 780 F.2d at 1443. However, the creditor must show "the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor." *Posta*, 866 F.2d at 367. In its leading case on this issue, the Ninth Circuit has stated: "When a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or

excuse, it is 'willful or malicious' even absent proof of a specific intent to injure." *Cecchini*, 780 F.2d at 1443. "As set forth in *Cecchini*, the act must necessarily cause harm to the creditor, but the creditor need not show that the debtor acted with an intent to harm the creditor." *Transamerica Commercial Finance Corporation v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir.1991); *see also Andrews v. Manser (In re Manser)*, 99 B.R. 434, 436 (Bankr.9th Cir.1989) (test for nondischargeability under section 523(a)(6) is: "1—whether the appellant committed a wrongful and intentional act; 2—whether such action produced harm; and 3—whether such action was without just cause or excuse.").

2. Application of the "willful and malicious" standard to Britton's conduct

■ Britton argues that his actions did not "necessarily produce" harm, as *Cecchini* requires. He suggests it was not substantially certain that Britton's actions would cause injury to Price, nor did Britton intend to injure her. He argues, "The most that can be said of Mr. Britton is that he was making an effort to induce Ms. Price to have her lipectomy done at the clinic where he worked."

We reject Britton's very narrow reading of the "necessarily produces" language of *Cecchini*. Here, although Britton did not anticipate that Dr. Cavanaugh might perform the operation negligently, it was foreseeable that injury to Price would result from Britton's intentional misrepresentation. Britton attempts to abstract his conduct from its context, cutting it off from any but the most obvious potential consequences. We would draw too fine a line if we concluded that harm was not substantially certain to result from Britton's misrepresentation and inducement.

II. Dischargeability of Punitive Damages under Section 523(a)(6)

■ Britton argues that even if his conduct is found to be "willful and malicious" within the meaning of section 523(a)(6),

that section bars discharge only of actual damages, not of punitive damages.

We have held that "both compensatory and punitive damages are subject to findings of nondischargeability pursuant to section[ ] 523(a)(6). . . ." *Moraes v. Adams (In re Adams)*, 761 F.2d 1422, 1423, 1428 (9th Cir.1985). In *Adams*, the court rejected the debtor's argument that only the punitive portion was nondischargeable under this section. It noted, " 'The exception is measured by the nature of the act, *i.e.*, whether it was one which caused willful and malicious injuries. *All liabilities resulting therefrom are nondischargeable.*' " *Id.* (quoting *Coen v. Zick*, 458 F.2d 326, 329–30 (9th Cir.1972)).

Britton raises several arguments against the BAP's holding that, under *Adams* and *Coen*, section 523(a)(6) can except punitive damages from discharge. He suggests first that punitive damages "are not a debt for injury caused by a debtor's willful and malicious acts." As the quoted language of *Coen* indicates, the Ninth Circuit has not read the language of section 523 so narrowly. Moreover, the Supreme Court has suggested that the term "debt" is to be given an expansive, not a narrow reading:

> As is apparent, Congress chose expansive language in [the Code's definitions of "claim" and "debt."] For example, to the extent the phrase "right to payment" is modified in the statute, the modifying language ... reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a "claim" giving rise to a "debt."

*Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990); *see also Placer v. Dahlstrom (In re Dahlstrom)*, 129 B.R. 240, 242 (Bankr.D.Utah 1991) (concluding, after analysis of *Davenport* and *Johnson v. Home State Bank*, —— U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), that punitive damages are "debts" under the Bankruptcy Code).

Britton also argues that because Congress specifically provided in section 523(a)(7) that a debt will not be discharged "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss," 11 U.S.C. § 523(a)(7), it intended that the other section 523 exceptions not encompass punitive damages. We have rejected this argument in *In re Levy*. Injured private plaintiffs are not precluded from relying on the exceptions set forth in other subsections of section 523 merely because one subsection precludes discharge of penalties owed to the government. *Palmer v. Levy (In re Levy)*, 951 F.2d 196, 199 (9th Cir.1991); *see also In re Dahlstrom*, 129 B.R. at 246 ("There is nothing in the language of § 523(a) or its legislative history to indicate that subsection (a)(7) was intended to preclude private entities from pursuing nondischargeability of judgments of punitive damages under other subsections.").

Britton argues as well that excepting punitive damages from discharge in bankruptcy contravenes the "fresh start" goals of the bankruptcy process. However, as the Supreme Court has noted, while the "fresh start" is "a central purpose of the [Bankruptcy] Code," this opportunity is limited to the " 'honest but unfortunate debtor.' " *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). The Bankruptcy Code has other goals, such as protecting certain classes of creditors; among such creditors are those whom the debtor has harmed by egregious conduct. In *Grogan*, the Supreme Court held that the "preponderance of the evidence," rather than the "clear-and-convincing evidence" standard applies to the section 523 exceptions. The Court observed, "[w]e think it unlikely that Congress, in fashioning the standard of proof that governs the applicability of these provisions would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud." *Grogan*, 111 S.Ct. at 659. Section 523(a)(6) reflects a similar concern for the victims of "willful and malicious injury."

Britton also argues that because the states have differing standards for the award of such damages, holding that punitive damages are nondischargeable under

section 523(a)(6) would frustrate the goal of a uniform bankruptcy law. However, while state courts apply state law in awarding punitive damages, "since 1970 ... the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan*, 111 S.Ct. at 658. There is thus no uniformity problem.

III. Award of Attorney's Fees for Frivolous Appeal

Price claims that Britton's arguments on legal and factual issues are without merit. She asks that attorney's fees be awarded because Britton's appeal is frivolous.

■ An appeal is considered frivolous "when the result is obvious or the appellant's arguments of error are wholly without merit." *Mackey v. Pioneer National Bank*, 867 F.2d 520 (9th Cir.1989). As our recent decisions in *In re Levy* and *In re Littleton* and our discussion above suggest, this and other courts are continuing to determine case by case the scope of section 523 exceptions. In addition, we could not say Britton's arguments on the evidentiary issues are "wholly without merit." Thus, an award of attorney's fees is inappropriate in this case.

AFFIRMED.