In re Glenn R. FIELDS, Debtor.

Paul E. BROUSSARD, Jr., Plaintiff,

v.

Glenn R. FIELDS, Defendant.

Bankruptcy No. 96–10122.
Adversary No. 96–1030.

United States Bankruptcy Court,
M.D. Louisiana.

Dec. 13, 1996.

Paul E. Broussard, Jr., pro se.

C. Glenn Westmoreland, for debtor/defendant.

## OPINION

LOUIS M. PHILLIPS, Bankruptcy Judge.

 Now before the Court is the adversary proceeding filed by Paul E. Broussard ("Plaintiff"), appearing *pro se*, against Glenn R. Fields ("Defendant"), who filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 22, 1996.[1] In his complaint, Plaintiff seeks to except from discharge a prepetition state court judgment (the "Judgment Debt") rendered in favor of Plaintiff and against Defendant, resulting from a prepetition automobile accident caused by Defendant's negligent driving. Plaintiff's complaint is reproduced as follows in its entirety because of its brevity and because Plaintiff is appearing *pro se:*

Bankruptcy, as I comprehend, relieves people from an overburden of debt. Glenn Fields only sought bankruptcy only when he discovered I was going to garnish his wages after a judgment was rendered to me for property damage and medical costs. The accident involved a hit and run and he had no liability insurance. He has also been notified to surrender his Driver's License and License plate as of 4/12/96. According to the Department of Motor Vehicle, he has not done either. This is further proof that Glenn Fields has no respect for either Local or State Laws, but chooses to utilize the law for his irresponsible actions. We tried very hard to discuss this with Glenn Fields' attorney and his immediate response was that Bankruptcy would be filed.

Attorney Westmoreland did not notify me or the courts about this Chapter 7. Michael Jackson, the attorney that represented me only in the negotiation of the settlement, notified Attorney Westmoreland that he was not the attorney representing me. Furthermore, I filed suit and my garnishment of wages without the assistance of an attorney. This should further prove that this is not being done in good faith. All documents were in my name and I feel that he should have notified me. All of the information I have provided you with is because I was persistent in contacting all parties involved on garnishment of wages and was finally told by Glenn Fields' employer that the Bankruptcy Court had stopped the garnishments.

---

1. On February 27, 1996, a section 341 meeting of creditors was held. The deadline to file a proof of claim was May 27, 1996. The deadline to file a complaint objecting to discharge of the debtor or to determine the dischargeability of certain types of debts was April 27, 1996. On April 29, 1996, the debtor-Defendant was granted a discharge. On May 14, 1996, Plaintiff filed an adversary complaint reciting therein that he had not received notice of the bankruptcy case prior to April 27, 1996. This complaint, which essentially seeks to have the Judgment Debt declared nondischargeable under section 523(a)(6) of the Code, was properly brought. The debtor did not dispute the fact of non-receipt of timely notice by Plaintiff. The effect of the failure timely to notify a creditor holding a right under section 523(a)(6) is the evaporation of the deadline established by section 523(c) by which the creditor must bring the complaint. As well, the requirement that the complaint be filed with the bankruptcy court disappears, with the creditor obtaining an expansion of jurisdiction so that state courts have the concurrent authority to entertain the dischargeability action.

Your careful consideration of my adversary complaint is most appreciated.

Respectfully Yours,

Paul Broussard, Jr.

The Court interpreted Plaintiff's complaint as asserting that the Judgment Debt should be excepted from discharge because, though the accident itself was caused by the Defendant's negligence, the Defendant had intentionally driven without liability insurance required by Louisiana state law (*see* La.R.S. 32:851 et seq.). At the scheduling conference, this interpretation was borne out, Plaintiff acknowledging that he was in possession of no facts which would establish that the accident itself was caused by an intentional act on Defendant's part. Counsel for Defendant acceded that the complaint attempted to state a claim under section 523(a)(6), relating to the intentional driving of a vehicle without statutorily-required insurance, and subsequently filed an answer and request to dismiss for failure to state a claim. Plaintiff's complaint and Defendant's request to dismiss were consolidated for trial.

Trial was held on Plaintiff's complaint on August 9, 1996. Plaintiff appeared *pro se*, and Defendant's attorney appeared on behalf of Defendant, who himself did not appear. At trial, the Court found that Plaintiff had a prepetition judgment against Defendant arising out of a prepetition accident, caused by Defendant's negligent operation of his motor vehicle, in which Plaintiff sustained bodily injury and property damage. The Court also found that at the time of the accident, Defendant was intentionally driving his vehicle without statutorily-required liability insurance.

The issue before the Court is whether a debtor's intentional failure to maintain statutorily-required liability insurance constitutes a "willful and malicious injury" under section 523(a)(6) of the Code, when a claimant has suffered an injury that would have been cov-ered by the insurance required by state law, but is deprived of the recovery which would have been afforded against the insurer because of the debtor's failure to carry the required insurance. Courts dealing with this issue have basically taken two approaches. The Eleventh Circuit in *In re Walker*, 48 F.3d 1161 (11th Cir.1995), as well as the majority of lower courts, have rejected this view, finding that the mere failure to maintain statutorily-required insurance is not a "willful and malicious injury" within the meaning of section 523(a)(6), because when the insurance terminated, there was no intent to harm the injured party, and because the failure to maintain insurance is not the act which causes harm to another party— another event, the actual physical injury to the victim, must occur, and another event, such as the actual accident, causes the harm. The minority approach, adopted by the lower courts but not yet adopted by any circuit courts, supports the view that a debtor's intentional failure to maintain statutorily-required liability insurance constitutes a "willful and malicious injury" under section 523(a)(6), on the ground that it is foreseeable that other persons will sustain injury when a vehicle owner has failed to maintain liability insurance or an employer has failed to maintain worker's compensation insurance, and that it is the failure to maintain insurance which necessarily causes the "economic" injury the claimant suffers due to the lack of insurance coverage.

This Opinion is offered because since the trial of this complaint, the Fifth Circuit has issued *Corley v. Delaney (In re Delaney)*, 97 F.3d 800 (5th Cir.1996), which, while it does not deal with the precise factual circumstances before this Court (failure to comply with statutorily-required insurance in the context of section 523(a)(6)), nevertheless is found by this Court to resolve, formally, the question presented here.[2] Accordingly, the

2. As will be discussed *infra*, close examination of Fifth Circuit law has revealed that perhaps the Fifth Circuit, through *Delaney*, was farming ground already plowed in *Kelt v. Quezada (In re Quezada)*, 718 F.2d 121 (5th Cir.1983), *cert. denied*, 467 U.S. 1217, 104 S.Ct. 2662, 81 L.Ed.2d 368 (1984), a case generally cited for espousing the standard, or definition, of "willful and malicious," within the meaning of section 523(a)(6).

*After* this Court's Opinion was prepared, the Fifth Circuit issued a substitute *Delaney* opinion in *Corley v. Delaney (In re Delaney)*, 97 F.3d 800 (5th Cir.1996), in which the Fifth Circuit acknowledged that the issue which the court had addressed allegedly for the first time in the prior

Court finds that the Judgment Debt is *not* excepted from discharge under section 523(a)(6), because by operating his motor vehicle without liability insurance, Defendant did not intend the actual bodily injuries and property damage suffered by Plaintiff, and because such operation was not substantially certain to cause Plaintiff's injuries.

## REASONS FOR RULING

**A. Section 523(a)(6) of the Bankruptcy Code, its precursor, and the Fifth Circuit definition of "willful and malicious," within the meaning of section 523(a)(6).**

Within the *Delaney* opinion the Fifth Circuit, perhaps somewhat cavalierly in light of the definitions of "willful and malicious injury" that have seen the light of day through many court opinions, states: "As succinctly stated by a bankruptcy court in Georgia, 'the plain language of Section 523(a)(6)' excepts from discharge debts arising from 'willful and malicious injury' rather than 'willful and malicious acts which cause an injury.'" *Delaney*, 97 F.3d at 802 (*quoting Eaves v. Hampel (In re Hampel)*, 110 B.R. 88, 93 (Bankr.M.D.Ga.1990)). Notwithstanding its breezy "plain meaning" approach to unraveling the meaning of section 523(a)(6), which heretofore has been the subject of considerable contemplation by many courts, the Fifth Circuit in *Delaney* does, it seems, reach the failure-to-insure issue before this Court. Ultimately, however, this Court's conceptualization of "willful and malicious injury" will have to be a slightly larger mouthful than the morsel just granted by the Fifth Circuit in

*Delaney*, not only because *Delaney* does not directly deal with the precise issue before this Court, but also because, as will be seen, the so-called "plain meaning" of "willful and malicious injury" is not so "plain" after all. The Court, therefore, begins its analysis with the legislative history of section 523(a)(6) of the Code, and accordingly now turns to section 17a(8) of the Bankruptcy Act of 1898, the precursor to section 523(a)(6).

Section 17a(8) of the Bankruptcy Act, 11 U.S.C. section 35a(8), set forth the "willful and malicious injury" exception to discharge as follows:

> **Section 17. Debts Not Affected by a Discharge.** a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as expected [i.e. excepted] under clause (2) of this subdivision....

11 U.S.C. section 35a(8) (1898).

Although section 17a(8) of the Act set forth an exception to discharge for debts incurred through "willful and malicious injuries," the provision did not set forth the *standard* for determining what exactly is required for an injury to be "willful and malicious," within the meaning of section 17a(8). The Supreme Court attempted to answer this question in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). In *Tinker*, the issue before the Supreme Court was whether a judgment obtained against the defendant-petitioner for damages arising from the crimi-

*Delaney* opinion actually had already been decided by *Quezada:*

> Indeed, the majority [of circuits] to which the Eleventh Circuit alluded [in *In re Walker*] [regarding the strict interpretation of section 523(a)(6) to require that the debtor either intend the resulting injury or intentionally take action that is substantially certain to cause the injury] includes the Fifth Circuit, for in *In re Quezada* [citation omitted], we held that a creditor must demonstrate 'conduct designed to cause deliberate or intentional injury' to establish a 'willful and malicious injury' under section 523(a)(6). Accordingly, today we reaffirm our place in the circuit majority identified in *In re Walker* by holding that, for willfulness and malice to prevent discharge under section

> 523(a)(6), the debtor must have intended the actual injury that resulted. [Footnote omitted.] As indicated in *Quezada* and *Walker*, intent to injure may be established by a showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury. [Footnote omitted.]

*Delaney*, 97 F.3d at 802.

The Fifth Circuit's substitute opinion in *Delaney* does not change this Court's Opinion in the instant case, but in fact bears out this Court's observations concerning just what happened, and when, regarding the evolution of the Fifth Circuit's section 523(a)(6) "willful and malicious" analysis.

nal conversation of the defendant with the plaintiff-respondent's wife was released by the defendant's discharge in bankruptcy, or whether the judgment was excepted from discharge under section 17a(8) of the Bankruptcy Act. The Supreme Court held that the judgment was one recovered for "willful and malicious injuries to the person or property of another," within the meaning of section 17a(8), and, in so holding, set forth the following standard for determining whether an act was willful and malicious under the Bankruptcy Act:

> In order to come within that meaning as a judgment for a wilful and malicious injury to person or property, *it is not necessary that the cause of action be based upon special malice, so that without it the action could not be maintained* .... The law will, as we think, imply that degree of malice in an act of the nature under consideration, which is sufficient to bring it within the exception mentioned. *[W]e think that a wilful disregard of what one knows to be his duty, an act which is against good morals, an act likely to cause injury, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception* .... It is urged that the malice referred to in the exception is malice towards the individual personally ... [but] we are not inclined to place such a narrow construction upon the language of the exception. We do not think that the language used was intended to limit the exception in any such way. It was an honest debtor, and not a malicious wrongdoer, that was to be discharged.

*Id.,* 193 U.S. at 486–87, 24 S.Ct. at 508–09 (emphasis added).

The Supreme Court went on to hold that the language of the exception did not refer only to those injuries to person or property which were accompanied by particular malice, or with a malevolent purpose towards the injured person:

> *It is not necessary in the construction we give to the language of the exception in the statute to hold that every wilful act which is wrong implies malice.* One who negli-

gently drives through a crowded thoroughfare and negligently runs over an individual would not, as we suppose, be within the exception. True, he drives negligently, and that is a wrongful act, but he does not intentionally drive over the individual. If he intentionally did drive over him, it would certainly be malicious. *It might be conceded that the language of the exception could be so construed as to make the exception refer only to those injuries to person or property which were accompanied by particular malice, or, in other words, a malevolent purpose towards the injured person, and where the action could only be maintained upon proof of the existence of such malice. But we do not think the fair meaning of the statute would thereby be carried out.* The judgment here mentioned comes, as we think, within the language of the statute, reasonably construed ... for the law implies that there must be malice in the very act itself. ...

*Id.,* 193 U.S. at 489, 24 S.Ct. at 510 (emphasis added).

Although the Supreme Court's standard for "wilful and malicious injury" in section 17(a)(8) of the Bankruptcy Act did *not* set forth a "reckless disregard" standard as being sufficient to except a debt from discharge under section 17(a)(8), some courts subsequently interpreted the Supreme Court's rationale in *Tinker* as providing that conduct entered into with reckless disregard to the rights of others that caused damage resulted in nondischargeable liability for "wilful and malicious injury" within the meaning of section 17(a)(8) of the Act. *See, e.g., Yackel v. Nys,* 258 App.Div. 318, 16 N.Y.S.2d 545 (App. Div.1939), *appeal denied,* 259 App.Div. 787, 18 N.Y.S.2d 751 (App.Div.1940); *Humphreys v. Heller,* 157 Misc. 568, 283 N.Y.S. 915 (Sup. Ct. Bronx County 1935); *Beam v. Karaim,* 47 N.Y.S.2d 193 (N.Y. Broome County Court 1944).

In 1978, with the enactment of the Bankruptcy Code, Congress specifically rejected what it thought was the "recklessness" standard of *Tinker v. Colwell.* The House Judiciary Committee's Report stated as follows:

Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, 'willful' means deliberate or intentional. To the extent that *Tinker v. Coldwell* [sic], 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977).

The Senate Report, which refers to section 523(a)(5) because S 2266 dealt with willful and malicious conversion or injury in section 523(a)(5), but which is applicable to section 523(a)(6) as well, stated as follows:

Paragraph (5) provides that debts for willful and malicious conversion or injury by the debtor to another entity or the property of another entity are nondischargeable. Under this paragraph 'willful' means deliberate or intentional. To the extent that *Tinker v. Coldwell* [sic], 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902), held that a less strict standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled.

S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978).

Moreover, the Congressional Record Statements for the Bankruptcy Reform Act of 1978 stated as follows:

Section 523(a)(6) adopts the position taken in the House bill and rejects the alternative suggested in the Senate amendment. The phrase 'willful and malicious injury' covers a willful and malicious conversion.

124 Cong.Rec. H11096 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini.

Accordingly, while the legislative history of section 523(a)(6) excludes recklessness as the standard for "willful and malicious injury," within the meaning of that provision, the history does not state what exactly is required for an injury to be "willful and mali-

cious." The Fifth Circuit answered this question in *Kelt v. Quezada (In re Quezada),* 718 F.2d 121 (5th Cir.1983), *cert. denied,* 467 U.S. 1217, 104 S.Ct. 2662, 81 L.Ed.2d 368 (1984). In *Quezada,* the debtors had maintained a vicious bulldog within their fenced premises, with knowledge that the dog had previously bitten a child. The dog escaped from the premises when Mrs. Quezada opened the gate to allow Mr. Quezada to bring his truck into the yard. The dog attacked the four-year-old son of the plaintiff without provocation, causing injuries for which the plaintiff had obtained in state court a judgment of $8,400 as administrator of his child's estate. Other than their harboring of the vicious dog and inadvertently permitting it to escape, no other action or conduct by the Quezadas had caused or contributed to the attack by the dog upon the plaintiff's child. The plaintiff then filed an adversary complaint to determine the dischargeability of his state-court judgment against the Quezadas. The bankruptcy court held that the debt was discharged and the district court affirmed. *Id.* at 122.

Noting that Congress intended that section 523(a)(6) of the 1978 Bankruptcy Code overruled what was thought to be the "reckless disregard" standard of *Tinker,* the Fifth Circuit affirmed the district court, finding that no debt for "willful and malicious injury by the debtor" had occurred:

'In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury of an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. *The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.'* [*Quoting* 3 Collier on Bankruptcy section 523.16 at 523–118 (15th ed. 1983).] Under the present facts, no debt for 'willful and malicious injury by the debtor',

Section 523(a)(6), is shown. *The debtors Quezadas' intentional harboring of the vicious pit bulldog within their fence is not shown to be conduct intentionally exposing others to harm by the vicious dog. The negligence of the debtors in permitting the dog to escape when they opened the gate is not shown to be conduct designed to cause deliberate or intentional injury.*

*Quezada,* 718 F.2d at 122.

■ The *Quezada* case, as well as others within the Fifth Circuit,[3] establish a standard of "willful and malicious injury" quite similar to the standard actually set forth in *Tinker,* namely, that "willful and malicious injury" does not require evil motive or malevolent intention for an act to be malicious. More importantly, perhaps, the *Quezada* case rejects the "reckless disregard" standard for determining "willful and malicious injury," and instead maintains that there must be *some type of causal connection* between the intentional act, the absence of just cause, and the actual injury. In other words, the *Quezada* standard and the standard espoused by Congress in section 523(a)(6), is *not* that the debtor intended *an act* and is responsible for *any harms which ensue, regardless of the causal connection between the act and the injury,* but rather that the debtor intended *the actual injuries suffered by the claimant or that the act itself necessarily led to the complainant's injury.*

Curiously, in *Delaney,*[4] which followed *Quezada,* the Fifth Circuit says that it is addressing the causal connexity question *for*

3. *See, e.g., Chrysler Credit Corp. v. Perry Chrysler Plymouth,* 783 F.2d 480 (5th Cir.1986); *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241, 245 (5th Cir.1983); *Petty v. Dardar (In re Dardar),* 620 F.2d 39 (5th Cir.1980); *Vickers v. Home Indemnity Co. (In re Vickers),* 546 F.2d 1149 (5th Cir. 1977); *Ragupathi v. Bairrington (In re Bairrington),* 183 B.R. 754 (Bankr.W.D.Tex.1995); *Wickes Lumber Co. v. Magee (In re Magee),* 164 B.R. 530 (Bankr.S.D.Miss.1994); *Stanley v. Cole (In re Cole),* 136 B.R. 453 (Bankr.N.D.Tex.1992); *F.D.I.C. v. Lefeve (In re Lefeve),* 131 B.R. 588 (Bankr.S.D.Miss.1991); *Meridian Production Credit Assoc. v. Hendry (In re Hendry),* 77 B.R. 85 (Bankr.S.D.Miss.1987).

4. As will be discussed in more detail *infra,* in *Delaney,* the Fifth Circuit held that bodily inju-

*the first time* by pronouncing that it is being presented with:

> ... the first occasion for us to address the dischargeability, under 11 U.S.C. section 523(a)(6), of a judgment debt arising from a debtor's accidental firing of a firearm—albeit one which he intentionally loads and carries to a confrontation—that causes unintended bodily injury to his eventual judgment creditor.

*Delaney,* 97 F.3d at 801.

To this Court, the question that the Fifth Circuit says it is addressing for the first time in *Delaney* in fact was addressed and answered by the Fifth Circuit in *Quezada*—in both cases, the debtor's accidental *act* (i.e., accidentally letting the vicious dog out of the gate in *Quezada,* and accidentally firing the gun in *Delaney* ) caused *unintended* bodily injury to the eventual judgment creditor. More to the point, in *Quezada,* the Fifth Circuit was faced with an *intentional act* (the keeping of a dangerous dog), an intervening *act of negligence* (opening the gate and thereby allowing the dog to escape), and an injury caused by the consequence of the debtor's negligence (which would not have been a consequence without the intentional act, i.e., the keeping of the dog—no dog, no need to keep the gate closed). However, the focus in *Quezada* was upon the question of the definition of "malicious." What was missed by the Fifth Circuit in *Delaney* is that *Quezada* stands for the proposition that injury resulting directly from a *negligent act* occurring within a chain of events comprised, in part, of a preceding *intentional act,* is *not*

ries resulting from the debtor's intentional act in twice tapping a loaded firearm against the window of a car in which the victim was riding, were not "willful and malicious," for purposes of section 523(a)(6) of the Code, even though the debtor had intentionally loaded the gun, had consciously chosen to take it with him when he confronted the victim, and might even have foreseen the gun's discharge when he tapped it twice against the car window with his finger on the trigger, absent evidence that the *injuries themselves, and not merely the act which produced them (that is, the intentional tapping of debtor's gun on the windshield), were intended by the debtor or were substantially certain to cause the injuries.*

*sufficiently connected* to the intentional act to be excepted from discharge under section 523(a)(6). ("The debtors Quezadas' intentional harboring of the vicious pit bulldog within their fence is not shown to be conduct intentionally exposing others to harm by the vicious dog. The negligence of the debtors in permitting the dog to escape when they opened the gate is not shown to be conduct designed to cause deliberate or intentional injury." *Quezada,* 718 F.2d at 123).

What the Fifth Circuit in *Delaney* is really saying by its "first time" pronouncement is that it is addressing, for the first time, the question of whether an intentional act within a chain of events which culminates in an injury, is sufficient to cause the debt grounded in the injury to be excepted from discharge under section 523(a)(6), or whether the intentional act must be performed with the intent to cause the actual harms suffered. Hidden within this question is an additional question, namely, what exactly is the "injury" to which section 523(a)(6) applies? While not present in *Delaney,* this additional question is presented in the case now before the Court, because the debtor argues that his true "injury" is *not* the bodily injury or property damage he sustained as a result of

Defendant's negligence, but rather is Plaintiff's *economic loss* which resulted from Defendant's lack of liability insurance. Defendant, of course, argues that the true "injury" is comprised by the actual bodily injuries and the property damage suffered by Plaintiff, rather than Plaintiff's "economic loss." Before the Court addresses this additional question, the Court will explore *Delaney* in more detail.

As mentioned in *Delaney,* the Fifth Circuit held that bodily injuries resulting from the debtor's intentional act in twice tapping a loaded firearm against the window of a car in which the victim was riding, were not "willful and malicious," for purposes of section 523(a)(6) of the Code, even though the debtor had intentionally loaded the gun, had consciously chosen to take it with him when he confronted the victim, and *might even have foreseen the gun's discharge* when he tapped it twice against the car window with his finger on the trigger, absent evidence that the *injuries themselves, and not merely the act which produced them, were intended by the debtor or were substantially certain to cause the injuries.* In so holding, the Fifth Circuit explicitly joined the majority of circuits[5] that have addressed the issue of

---

**5.** The Second, Third, Sixth, Eighth and Tenth Circuits, like the Fifth and Eleventh Circuits, have strictly interpreted section 523(a)(6) to require that the debtor either intend the resulting injury or intentionally take action that is substantially certain to cause the injury. In *Navistar Financial Corp. v. Stelluti (In re Stelluti),* 94 F.3d 84, 87–88 (2d Cir.1996), the Second Circuit held that a Chapter 7 debtor-wife's debt to a creditor-motor vehicle financier was excepted from discharge under section 523(a)(6) because the debtor's transferring of the creditor-financier's funds to out-of-state bank accounts in the debtor's name was "deliberate and intentional" and because the debtor had "proceeded to take a number of affirmative steps that necessarily produced harm to [the creditor-financier] as she transferred funds from accounts in New Jersey to accounts in Connecticut." In *Conte v. Gautam (In re Conte),* 33 F.3d 303, 307 (3rd Cir.1994), the Third Circuit held that "actions are willful and malicious within the meaning of section 523(a)(6) if they either have a purpose of producing injury or have a substantial certainty of producing injury," and in *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1228–29 (6th Cir.1991), the Sixth Circuit explicitly rejected the very strict view that section 523(a)(6) requires an intent to cause specific injury, but did adopt a narrow

interpretation of "willful and malicious" that requires "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse."

Moreover, in *Cassidy v. Minihan,* 794 F.2d 340, 343–44 (8th Cir.1986), the Eighth Circuit held that the legislative history of section 523(a)(6) "persuasively indicates a congressional intent to allow discharge of liability for injuries unless the debtor intentionally inflicted an injury, and in *Geiger v. Kawaauhau (In re Geiger),* 93 F.3d 443, 444–45 (8th Cir.1996), the Eighth Circuit, citing *Cassidy,* held that the debtor-doctor's medical malpractice debt was not excepted from discharge under section 523(a)(6) because the doctor was at the very least negligent and at the very worst reckless. Moreover, the evidence showed only that the doctor failed to save the creditor-victim's leg from the ravages of an infection, not that the doctor intended to harm the victim, and that the doctor's efforts to treat the victim were not calculated to result in the loss of her leg and therefore were not malicious.

Furthermore, in *Dorr, Bentley & Pecha, CPAs, P.C. v. Pasek (In re Pasek),* 983 F.2d 1524, 1527 (10th Cir.1993), the Tenth Circuit held that a "'willful and malicious injury' occurs when the debtor, without justification or excuse, and with full knowledge of the specific consequences of

whether a deliberate and intentional act that results in injury may constitute a "willful and malicious injury" under section 523(a)(6), or whether the debtor must intend the actual injury before the resulting debt may be nondischargeable, and that have strictly interpreted section 523(a)(6) to require that the debtor either *intend the resulting injury or intentionally take action that is substantially certain to cause the injury.* The Fifth Circuit also explicitly joined the Eleventh Circuit in *In re Walker,* 48 F.3d 1161 (11th Cir.1995), which held that an employer's failure to obtain statutorily-required worker's compensation insurance did *not* constitute a "willful and malicious injury" under section 523(a)(6), and that the employee's physical injury was not substantially certain to result from the debtor's failure to obtain worker's compensation insurance. Moreover, the Fifth Circuit favorably cited *Eaves v. Hampel (In re Hampel),* 110 B.R. 88 (Bankr. M.D.Ga.1990), in which the bankruptcy court held that a debt based upon a workers' compensation award arising out of the employer's failure to obtain worker's compensation insurance was not excepted from discharge under section 523(a)(6), because the defendant's failure to obtain insurance coverage "did not unleash an unbroken causative chain which led to Plaintiff's physical injury. An act independent from the failure to obtain insurance had to occur before Plaintiff suffered a loss." *Id.* at 93.

The Fifth Circuit wrote in *Delaney* as follows:

At the heart of this case is the question whether, for a debtor to be denied a discharge under section 523(a)(6) of a debt arising from his infliction of death or bodily injury, it is the act or the injury that must be willful and malicious. This issue was recently crystallized by the Eleventh Circuit in *In re Walker,* in which that court stated that the central question in such cases is: '[W]hether a deliberate and intentional act that results in injury may constitute a "willful and malicious injury" under section 523(a)(6), or whether the debtor must first intend the actual injury before the resulting debt may be nondischargeable.' *In re Walker,* 48 F.3d 1161, 1164 (11th Cir.1995).... The Eleventh Circuit went on to note that: 'The majority of circuits that have addressed this issue have strictly interpreted section 523(a)(6) to require that the debtor either intend the resulting injury or intentionally take action that is substantially certain to cause the injury....' *Id....* Today we join that circuit majority, [footnote omitted—citations listed in footnote 5, *supra* ] as did the Eleventh Circuit in *In re Walker,* by holding that, *for willfulness and malice to prevent discharge under section 523(a)(6), the debtor must have intended the actual injury that resulted....* "As succinctly stated by a bankruptcy court in Georgia, 'the plain language of Section 523(a)(6)' excepts from discharge debts arising from 'willful and malicious injury' rather than 'willful and malicious acts which cause an injury.'" *Eaves v. Hampel (In re Hampel),* 110 B.R. 88, 93 (Bankr. M.D.Ga.1990). Here, Delaney unquestionably acted intentionally when he loaded the shotgun, took it with him to the confrontation with Corley, and, with his finger on the trigger, twice tapped the barrel of the gun on the windshield of the car to get Corley's attention. *In contrast, however, the firing of the gun was neither deliberate nor intentional; on the contrary, it was wholly unintentional, even though possibly not wholly unforeseeable.* It follows that, under our (and the majority of the circuits') reading of section 523(a)(6), Delaney did not intend Corley's injury—or any injury for that matter. Thus the injury was not 'willful and malicious' on the part of Delaney: *He neither intended the*

---

his conduct, acts notwithstanding, knowing full well that his conduct will cause particularized injury. Such a standard is consistent with the rule that section 523(a)(6) requires not only intentional conduct on the part of the debtor, but also intentional or deliberate injury."
So far, only the Ninth Circuit has held that the creditor need not show that the debtor acted with an intent to harm the creditor, although the act must necessarily cause harm to the creditor. *See Britton v. Price (In re Britton),* 950 F.2d 602, 605 (9th Cir.1991). Moreover, according to the Ninth Circuit, while the creditor must show that the debtor acted intentionally, the "intent required is intent to do the act at issue, not intent to injure the victim." *Id.*

*injury nor intentionally took action that was 'substantially certain' to cause the injuries* that Corley suffered. Consequently, as ultimately held by both the bankruptcy court and the district court, the negligence judgment debt was and remains dischargeable in bankruptcy.

*Delaney*, 97 F.3d at 802 (emphasis added).

■ Although the issue of what constitutes "willful and malicious injury," within the meaning of section 523(a)(6) of the Code, is a question to be decided by federal rather than state law, the Fifth Circuit nevertheless buttressed its holding in *Delaney* by referring in a footnote to Louisiana's identical distinction between intentional acts and intended injuries, as found in cases involving the application of intentional injury exclusions found in liability insurance policies. In particular, the Fifth Circuit cited *Breland v. Schilling*, 550 So.2d 609, 611–614 (La.1989), which held that the proper inquiry is not whether plaintiff's alleged injuries were caused by intentional acts by the insured, but whether insured subjectively intended to inflict plaintiff's specific alleged injuries or reasonably expected that these injuries would follow from his conduct. Accordingly, the Fifth Circuit affirmed the determination of dischargeability by the bankruptcy court on remand, as affirmed by the district court. *Delaney*, 97 F.3d at 802.[6]

## B. Application of the Fifth Circuit's *Quezada* and *Delaney* standard.

■ As discussed, although the Fifth Circuit has not yet ruled on the precise issue before this Court, the Fifth Circuit established in *Quezada* and *Delaney* that a debt may be excepted from discharge under section 523(a)(6) of the Code only if the debtor intended the *actual injury that resulted or intentionally took action that was substantially certain to cause the injury*. Moreover, in *Delaney* the Fifth Circuit joined the *Walker* court's rationale and holding, in which the Eleventh Circuit had specifically concluded that an employee-creditor's physical injury

---

6. *Breland v. Schilling* involved the interpretation of an intended injury exclusion clause in a liability insurance policy. The insured had punched another person and fractured his jaw, and a jury had determined that the defendant-insured had not subjectively intended to break the plaintiff's jaw. The Louisiana Supreme Court, focusing on the "result of an intentional act, rather than upon the intended or expected bodily injury," *id.* at 614, found that the subjective intention and expectation of the insured determined which injuries fell within and which fell beyond the scope of coverage under the policy at issue, and in adopting a "fact-sensitive test for the insured's subjective intent, ... reject[ed] the approach ... that an insured intends, as a matter of law, all injuries which flow from an intentional act." *Id.* at 611, 613. The court held as follows:

[W]hen minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance or coincidence, accident, or whatever, coverage for the more severe injury is not barred. Whether a given resulting bodily injury was intended 'from the standpoint of the insured' within these parameters is a question of fact. Such factual determinations are the particular province of the trier of fact, in this instance the trial jury.

*Id.* at 614.

The Louisiana Supreme Court concluded because the terms of the insurance contract dictated that the insured's subjective intent regarding bodily injury, as measured by the jury, controlled whether coverage applied, and because the jury found that the defendant had not intended to break the plaintiff's jaw and that the defendant had not intended to inflict any similar serious injury, the insured's homeowners insurer provided coverage for injuries suffered by the plaintiff. *Id.*

Of course, though it need not be here, it could be argued that a determination of whether a claimant is afforded insurance coverage (if the injury is *not* intentional) might involve different considerations than those underlying a section 523(a)(6) exception-to-discharge determination. In fact, the Louisiana Supreme Court seems to abjure the notion that an intentional injury is one substantially certain to follow from an intentional act, which notion is embraced by the Eleventh Circuit in *Walker*, and implicitly embraced by the Fifth Circuit in *Delaney*. Apparently, the Louisiana Supreme Court has found no room for an objective "reasonably could be held to know that the intentional act necessarily produced the harm" standard. Regardless, the applicable section 523(a)(6) standard is a federal question, and, as mentioned, it appears that the *Delaney* reference to state law had the sole purpose of corralling support.

was not substantially certain to result from the debtor's failure to obtain worker's compensation insurance, and thus was not excepted from discharge under section 523(a)(6).

Applying the *Quezada, Delaney* and *Walker* analyses, this Court concludes that the Judgment Debt in question should *not* be excepted from discharge under section 523(a)(6) of the Code. Although Defendant intentionally drove his vehicle without liability insurance at the time of the accident, no evidence was adduced at trial that Defendant intentionally caused Plaintiff the actual injuries Plaintiff suffered as a result of the accident. Moreover, it is clear that Plaintiff's bodily injury and property damage was not substantially certain to result from Defendant's failure to obtain motor vehicle liability insurance. While Defendant's failure to obtain such insurance did result in Plaintiff's lack of coverage *after* the accident, it cannot be said that Defendant intended to injure Plaintiff in an accident or that there was an unbroken chain of events leading from Defendant's intentionally driving without insurance to Plaintiff's bodily injury and property damage. *See Walker,* 48 F.3d at 1165.

In fact, whether Defendant intentionally drove his car with or without liability insurance is irrelevant for purposes of section 523(a)(6), because that provision only comes into effect *if* there is an accident—there may be an accident, but then again there may not be an accident, regardless of whether the driver has liability insurance. This *"if"* clearly indicates to the Court that Defendant's intentional driving of his vehicle without liability insurance was not substantially certain to cause Plaintiff's bodily injury or property damage.

The fact that it was foreseeable that financial loss might result as a result of Defendant's intentionally driving his car without liability insurance *if* the accident occurred is not sufficient for purposes of section 523(a)(6), because it might be that Defendant would never be involved in an accident while intentionally driving an uninsured vehicle. Defendant's mere knowledge that financial harm might ultimately result from his intentionally driving without insurance simply is not the degree of culpability necessary to support a determination of dischargeability under section 523(a)(6). *Delaney* supports the Court's conclusion, because in *Delaney,* the Fifth Circuit noted that the debtor's firing of the gun was "wholly unintentional, *even though possibly not wholly unforeseeable."* (Emphasis added.) *Delaney,* 97 F.3d at 802. Applying this finding in *Delaney* to the present case, the Court concludes that Plaintiff's injuries were wholly unintentional on the part of Defendant, even though the economic loss to Plaintiff was possibly not wholly unforeseeable.

■ By its endorsement of *Walker* and *Hampel, Delaney* also disposes of Plaintiff's argument that his true injury is not the bodily injuries and property damage he sustained as a result of Defendant's negligence, but rather is the loss of Plaintiff's statutory right to motor vehicle liability insurance protection under La.R.S. 32:851 et. seq. ("Motor Vehicle Safety Responsibility Law"). In other words, argues Plaintiff, because his economic injury was a necessary and direct result of Defendant's failure to obtain such coverage, Defendant must have intended that economic injury. A minority of lower courts have supported this view, on the ground that it is foreseeable that other persons will sustain injury when a vehicle owner has failed to maintain liability insurance or an employer has failed to maintain worker's compensation insurance, and that it is the failure to maintain insurance which necessarily causes economic injury. *See, e.g., Barnett Bank of Southeast Georgia, N.A. v. Ussery (In re Ussery),* 179 B.R. 737 (Bankr.S.D.Ga.1995); *Hilliard v. Peel (In re Peel),* 166 B.R. 735 (Bankr.W.D.Okla.1994); *Carter v. Verhelst (In re Verhelst),* 170 B.R. 657 (Bankr. W.D.Ark.1993); *Hester v. Saturday (In re Saturday),* 138 B.R. 132 (Bankr.S.D.Ga. 1991); *Matter of Whipple,* 138 B.R. 137 (Bankr.S.D.Ga.1991); *Strauss v. Zielinski (In re Strauss),* 99 B.R. 396 (N.D.Ill.1989); *Vig v. Erickson (In re Erickson),* 89 B.R. 850 (Bankr.D.Idaho 1988); *Juliano v. Holmes (In re Holmes),* 53 B.R. 268 (Bankr.W.D.Pa. 1985).

The majority of lower courts, however, have rejected this view, finding that the mere

failure to maintain insurance is not a "willful and malicious injury" within the meaning of section 523(a)(6), because when the insurance terminated, there was no intent to harm the injured party, and because the failure to maintain insurance is not the act which causes harm to another party—another event, the actual physical injury to the victim, must occur, and another event, such as the actual accident, causes the harm. *See, e.g., Choi v. Brown (In re Brown),* 201 B.R. 411 (Bankr.W.D.Pa.1996); *White v. Grisham (In re Grisham),* 177 B.R. 306 (Bankr. W.D.Mo.1995); *Herndon v. Brock (In re Brock),* 186 B.R. 293 (Bankr.N.D.Ga.1995); *Parker v. Grzywacz (In re Grzywacz),* 182 B.R. 176 (Bankr.E.D.Mich.1995); *LSI Financial Group v. Perry (In re Perry),* 166 B.R. 319 (Bankr.M.D.Tenn.1994); *Walters v. Betts (In re Betts),* 174 B.R. 636 (Bankr. N.D.Ga.1994); *Myrick v. Ballard (In re Ballard),* 186 B.R. 297 (Bankr.N.D.Ga.1994); *Bailey v. Chatham (Matter of Bailey),* 171 B.R. 703 (Bankr.N.D.Ga.1994); *Collora v. Leahy (In re Leahy),* 170 B.R. 10 (Bankr.D.Me. 1994); *Szewczyk v. Wojtaszek,* 164 B.R. 604 (N.D.Ill.1994); *Silva v. Frias (In re Frias),* 153 B.R. 6 (Bankr.D.R.I.1993); *Tiberi v. Annan (In re Annan),* 161 B.R. 872 (Bankr. D.R.I.1993); *Morton v. Kemmerer (In re Kemmerer),* 156 B.R. 806 (Bankr.S.D.Ind. 1993); *Beyersdoerfer v. Bex (In re Bex),* 143 B.R. 835 (Bankr.E.D.Ky.1992); *Sparks v. Adams (In re Adams),* 147 B.R. 407 (Bankr. W.D.Mich.1992); *Wood Peek v. Mazander (In re Mazander),* 130 B.R. 534 (Bankr. E.D.Mo.1991); *Eaves v. Hampel (Matter of Hampel),* 110 B.R. 88 (Bankr.M.D.Ga.1990); *Basham v. Druen (In re Druen),* 121 B.R. 509 (Bankr.W.D.Ky.1990); *Conroy v. Kimsey (In re Kimsey),* 97 B.R. 1003 (Bankr.D.Neb. 1989); *State Farm Insurance Co. v. McConnehea (In re McConnehea),* 96 B.R. 121 (S.D.Ohio 1988); *Denehy v. Zalowski (In re Zalowski),* 107 B.R. 431 (Bankr.D.Mass. 1989); *Madden v. Fate (In re Fate),* 100 B.R. 141 (Bankr.D.Mass.1989); *Pichardo v. Granda (In re Granda),* 98 B.R. 598 (Bankr. S.D.Fla.1989); *Pritchard v. Eberhardt (In re Eberhardt),* 92 B.R. 773, 777 (Bankr. E.D.Tenn.1988); *Austin Mutual Insurance Co. v. Schultz (In re Schultz),* 89 B.R. 28 (Bankr.E.D.Wis.1988); *Pechar v. Moore,* 98 B.R. 488 (D.Neb.1988); *Samuel v. Baitcher (In re Baitcher),* 36 B.R. 588 (Bankr.N.D.Ga. 1983), *vacated and remanded for other reasons,* 781 F.2d 1529 (11th Cir.1986); *Hamilton v. Brower (In re Brower),* 24 B.R. 246 (Bankr.D.N.M.1982); *Aldridge v. Scott (In re Scott),* 13 B.R. 25 (Bankr.C.D.Ill.1981).

In *Walker,* which the Fifth Circuit explicitly joined in *Delaney,* the Eleventh Circuit rejected the "statutory right" theory as follows:

> However, [the employee-creditor] has failed to cite, and we cannot locate, any persuasive or binding authority to convince us that statutorily required workers' compensation benefits are property, distinguishable from the rights of any other creditor against a debtor. Moreover, this type of 'injury' is nothing more than a recasting of the 'reckless disregard' standard expressly rejected by Congress and by this court. *American Cast Iron Pipe Co. v. Wrenn (In re Wrenn),* 791 F.2d 1542, 1544 (11th Cir.1986) (per curiam) ("'[A]n act in reckless disregard of the rights of others is insufficient to constitute "willful and malicious" conduct for purposes of 11 U.S.C. section 523(a)(6).'"); *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1263 (11th Cir.1988); S.Rep. No. 989, at 79, 1978 U.S.C.C.A.N. at 5865; H.R.Rep. No. 595, at 365, 1978 U.S.C.C.A.N. at 6320–21. Operating without insurance is a clear example of recklessness: the failure to insure does not guarantee that an employee will not suffer a physical or economic injury while on the job. The employer's failure to secure workers' compensation coverage mandated by the state legislature may subject him to criminal penalties including imprisonment, ... but it does not follow that his discharge in bankruptcy is to be denied as an additional penalty. Moreover, we reject the argument that a loss of workers' compensation insurance *per se* is an injury under section 523(a)(6). [The employee-creditor] argues that [the debtor-contractor's] intentional failure to obtain statutorily required workers' compensation insurance constitutes a 'willful and malicious' injury under section 523(a)(6). We con-

clude that [the debtor-contractor] did not intend to injure the [employee-creditor] and that [the employee-creditor's] physical injuries were not substantially certain to occur as a result of [the debtor-contractor's] failure to act.

*Walker,* 48 F.3d at 1165–66.

Accordingly, the Eleventh Circuit affirmed the district court's decision to dismiss the employee-creditor's claim on summary judgment. *Id.* at 1166.

*Walker* clearly disposes of Plaintiff's argument that his true injury is not the bodily injury and property damage he sustained as a result of Defendant's negligence, but rather is the loss of Plaintiff's statutory right to motor vehicle liability insurance protection under Louisiana's Motor Vehicle Safety Responsibility Law, and that because Plaintiff's economic injury was a necessary and direct result of Defendant's intentional failure to obtain such coverage, Defendant must have intended that economic injury.[7]

Moreover, this Court agrees with the Eleventh Circuit that the "economic injury" argument is nothing more than a recasting of the "reckless disregard" standard expressly rejected by Congress in section 523(a)(6). The economic injury argument is correct in recognizing that intentionally driving a car without statutorily-required insurance constitutes a reckless disregard of the rights of those whom the insurance-requirement statutes are designed to protect. The economic injury argument, however, is incorrect in that it requires the exception from discharge of *any* injury which might flow from the reckless act itself, regardless of whether an intervening act of negligence occurs, and regardless of whether the injury itself was

intended by the actor or whether the intentional act was substantially certain to result in the injury. In essence, the economic injury analysis equates the scope of liability with the scope of the debts excepted from discharge, and would require that *any* damage which is a foreseeable ultimate consequence of an intentional act be excepted from discharge. Clearly, if the loss of rights due to reckless disregard of rights could be the ground of excepting a debt from discharge, then the debt arising from *any* foreseeable injury would be excepted, regardless of the actual cause of the actual injury. Thus, in positing that the loss of right (insurance protection) is nondischargeable because it is a foreseeable consequence of driving without insurance, the economic injury theory espouses the same scope of nondischargeability as does the "reckless disregard" standard. Abnegation of the reckless disregard standard, therefore, has resulted in two distinct (and necessarily caused) consequences: the act causing the injury must be intentional, and the injury caused must have either been intended by the actor or substantially certain to be caused, directly, by the intentional act.

Accordingly, this Court finds that although Defendant's intentional operation of his motor vehicle without insurance is a clear example of recklessness, the failure to insure was not substantially certain to cause bodily injury or property damage. Likewise, there is no evidence that the defendant intentionally caused the accident which directly caused the personal injury and property damage upon which the Judgment Debt issued.

## CONCLUSION

The Court concludes that under both *Quezada* and *Delaney,* the Judgment Debt is

---

7. Like the Eleventh Circuit in *Walker,* this Court cannot find any persuasive or binding authority to convince it that statutorily-required motor vehicle liability insurance benefits are *property,* distinguishable from the rights of any other creditor against a debtor. However, this conclusion of the *Walker* court seems irrelevant because even if the right to be protected by statutorily-required insurance *is* a property right, the property right is triggered only by an injury. The injury, therefore, is the required "if" in the section 523(a)(6) equation. Recasting the *Quezada, Delaney,* and *Walker* analyses, the intentional act of driving without insurance may be within the chain of events leading to an injury, but the relevant trig-

gering event is the negligent act itself, which *then* triggers the statutory right to insurance benefits. Therefore, again, driving without insurance is not substantially certain to cause injury, even to the property right to statutorily-required insurance benefits (if such exists), because driving without insurance is not substantially certain to cause an injury, which is the necessary "if" that must precede the loss of the statutory right. As long as there is the necessity of this "*if*" in the section 523(a)(6) equation ("I *will be* hurt *if* I get hurt; i.e., my statutory right to insurance benefits will be lost *if* I am injured and there is no insurance coverage"), this "if" is the intervening action causing the injury.

*not* excepted from discharge under section 523(a)(6), because by operating his motor vehicle without liability insurance, Defendant did not intend the *actual* bodily injuries and property damage suffered by Plaintiff, and because such operation was not substantially certain to cause Plaintiff's injuries. Moreover, *Delaney* also disposes of Plaintiff's argument that his true injury is not the bodily injuries and property damage he sustained as a result of Defendant's negligence, but rather is the loss of Plaintiff's statutory right to motor vehicle liability insurance protection and that, because Plaintiff's economic injury was a necessary and direct result of Defendant's failure to obtain such coverage, Defendant must have intended that economic injury.

A separate judgment, dismissing the complaint with prejudice, will be entered.