In the Matter of Samuel R. BOURDON, Marcia A. Bourdon, Debtors.

FIRST OF AMERICA BANK, Plaintiff,

v.

Samuel R. BOURDON and Marcia A. Bourdon, Defendants.

Bankruptcy No. 93–30822.
Proc. No. 93–3070.

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Nov. 9, 1993.

Gordon C. Miller, Early, Lennon, Peters & Crocker, P.C., Kalamazoo, MI, for plaintiff.

Samuel R. Bourdon and Marcia A. Bourdon, pro se defendants.

*DECISION and ORDER*

ROBERT K. RODIBAUGH, Bankruptcy Judge.

This matter is before the court on an AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT ("Complaint") filed August 17, 1993, by First of America Bank (the "Bank") against Samuel R. Bourdon ("Bourdon") and Marcia A. Bourdon, debtors herein (jointly referred to as "Debtors"). Trial on the complaint was held October 25, 1993, with Debtors appearing *pro se.* The matter was taken under advisement on October 26, 1993.

*Jurisdiction*

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I), over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1). This decision and order shall represent findings of fact and con-

clusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rule of Bankruptcy Procedure 7052.

### Background

Debtors filed their petition for relief under Chapter 7 of the Bankruptcy Code on April 8, 1993. On January 26, 1989, Debtors prepared and signed a Credit Application and Personal Financial Statement which was submitted to the Bank. [Document attached to Complaint.] Debtors sought a loan in order to purchase a boat (the "Boat").[1] On February 6, 1989, Debtors entered into a Retail Installment Contract with the seller, Pier 1000 Marina. [The Bank's exhibit 1.] Under the terms of the Retail Installment Contract Pier 1000 Marina assigned the contract to the Bank, and all payments were to be made to the Bank. Debtors made no payments on the Retail Installment Contract, and on February 8, 1993, Bank obtained a default judgment against Debtors in the amount of $29,125.25.[2] [The Bank's exhibit 2.] Debtors made no payments on the judgment.[3]

The Bank alleges that "(t)he information in the Application and Loan Contract was materially false." [Complaint, ¶ 7.] According to the testimony of the Bank's bankruptcy coordinator, Julie Goodwin, the Bank requires a borrower to have made a down payment on a purchase before the Bank will finance the balance due. The Retail Installment Contract, signed by Debtors, indicates that a down payment of $4,000 had been made. At the hearing, the Bank maintained that such down payment had not been made. The Bank did not explain what information on the Credit Application and Personal Financial Statement was alleged to be materially false.

The Bank additionally argued at the hearing that the entire transaction was a "sham" which was not entered into in good faith. Bourdon's employer owned the Boat, and, according to the Bank, the transaction was designed to enable the employer to obtain financing. The Bank also claimed, and Bourdon acknowledged, that he had neither inspected the Boat prior to purchase nor used the Boat after its purchase.

According to Bourdon's testimony, he was employed by Fadden Construction Company. His employer, Jeffrey Fadden ("Fadden"), originally owned the Boat, which, prior to the sale, was in dry dock at Pier 1000 Marina. Fadden wished to purchase a different boat and approached Bourdon about buying the Boat. Bourdon agreed to purchase the Boat although he did not have money for a down payment. Fadden offered to loan Debtors $1,000 for that purpose, although it is not clear exactly when that offer was made. Apparently at some point Fadden had transferred his interest in the Boat to Pier 1000 Marina, as it was listed as the seller on the Retail Installment Contract.

Bourdon further testified that both Fadden and the Debtors were present at Pier 1000 Marina at the time the Retail Installment Contract was to be executed. Bourdon was advised by Pier 1000 Marina that more than

---

1. The Boat was a 1953, 33 foot, Safety Craft.

2. First of America Bank v. Samuel R. and Marcia A. Bourdon, case no. A92 3488 CK, State of Michigan, 9th Judicial Circuit.

3. Inasmuch as Debtors proceeded *pro se* at the hearing, the testimony elicited was not as well developed as it might otherwise have been. However, during Bourdon's closing argument he stated that the Boat had been repossessed, and the Bank did not dispute this statement. Bourdon did not explain when the repossession had occurred. However on the Statement of Financial Affairs at number 5 Debtors indicate that no property had been repossessed within one year immediately preceding the commencement of their bankruptcy case. Consequently, although not clear who now has possession of the Boat, and at what point they came into possession, the court presumes the Bank repossessed and sold the Boat.

If the Bank repossessed the Boat more than one year before Debtors filed their petition, they also repossessed the Boat before they obtained the judgment. If that is the situation, the court has difficulty reconciling the judgment amount of $29,058.21. Debtors financed $19,920 with interest at 11.5% per year and payments amortized over a ten year period. At the time the judgment was obtained Debtors were approximately four years in arrears, and would have owed the amount of the judgment. However, if the Bank had repossessed the Boat this would serve to satisfy, at least partially, the amount owed on the Retail Installment Contract.

$1,000 was needed as a down payment. Bourdon was asked to leave the room while a representative of Pier 1000 Marina and Fadden conversed, after which Fadden informed Bourdon that he would increase the loan to $4,000, and issued a check in that amount. Bourdon gave the check to Pier 1000 Marina. The Bank did not refute Bourdon's account.

Bourdon further stated that shortly after purchasing the Boat, he was involved in an automobile accident, and sustained injuries which prevented him for an extended period of time from performing his job or using the Boat. He claims he notified the Bank about the accident and the fact that he was unable to work. The Bank did not refute this testimony.

### Discussion

The Bank asks that the judgment debt be excepted from Debtors' discharge. Although the Bank did not indicate which Code provision it was relying on, based upon the allegations, evidence, and argument at hearing the court concludes that the Bank intended to bring its Complaint under 11 U.S.C. § 523(a)(2).

In light of the strong policy of the Bankruptcy Code to provide the debtor with a fresh start, the exceptions to discharge are generally construed liberally in favor of the debtor and strictly against the creditor. *Sears Roebuck and Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 748 (Bankr.N.D.Ind. 1986). The creditor must establish that it is squarely within one of the statutory exceptions, and has the burden of proof on each element. *Id.* (citations omitted). Each specific element must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991), *rev'g In re Garner*, 881 F.2d 579 (8th Cir.1989).

Section 523(a)(2) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

> .    .    .    .    .

(2) for money ... to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ... financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's ... financial condition;

(iii) on which the creditor to whom the debtor is liable for such money ... reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(A) and (B) (Callaghan 1992–93).[4]

Subsection (A) and (B) are distinct. Under subsection (A) a falsity may be either oral or written but must not relate to the debtor's financial condition. Under subsection (B) the falsity must be in writing and must relate to the debtor's financial condition. Here, the alleged falsity was a statement in writing that a down payment on the Boat had been made. Thus, it could be challenged under either (A) or (B), depending on whether or not it respected the debtor's financial condition. Julie Goodwin testified the Bank always required a down payment under a retail installment contract so that the debtor would have some equity in the goods. This in turn would motivate the debtor to make the required payments under the contract. There was no testimony that a potential borrower's financial condition was relevant to this requirement. The purpose of the requirement was simply to provide an incentive to avoid default on the loan contract. Apparently, the Bank generally relies upon a statement concerning a down payment for reasons other than what it might show about the potential borrower's financial condition. Nevertheless,

---

4. Section 523(a)(2)(C) provides that debts for "luxury goods" may be nondischargeable if the debtor incurred the debt within 40 days before the order for relief was entered in the bankruptcy proceeding. Although the Boat might qualify as a luxury good, the Bank may not rely on (C) because of the time limitations of that provision.

whether or not it is a statement concerning the Debtors' financial condition need not be decided inasmuch as the court finds that the Bank has failed to prove the other necessary elements under either subsection (A) or (B).

▉ The creditor proceeding under either subsection (A) or (B) must prove that the debtor knowingly made a false representation which was relied upon by the creditor, and which was made with the intention and purpose of deceiving the creditor. *Georgia Casualty and Surety Co. v. Miller (In re Miller)*, 112 B.R. 937, 939 (Bankr.N.D.Ind. 1989) [addressing § 523(a)(2)(A) ]; *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir.1991) [addressing § 523(a)(2)(B) ]. A debtor's silence regarding a material fact can constitute a false representation. *Caspers v. Van Horne (Matter of Van Horne)*, 823 F.2d 1285, 1288 (8th Cir.1987) (citations omitted).

▉ The Retail Installment Contract indicates that a down payment had been made. From the Debtors' standpoint, a down payment had been made. Debtors received money from Fadden specifically for that purpose, which they transferred to Pier 1000 Marina. Perhaps more sophisticated borrowers would understand that borrowing money to make a down payment was contrary to usual practices and the bank's policy. However, these Debtors did not have extensive borrowing experience, and, in fact, had never before received financing for such a large amount.

Pier 1000 Marina accepted the check issued by Fadden and indicated on the Retail Installment Agreement that a down payment had been made. It is not unreasonable or improbable that these Debtors would have relied on Pier 1000 Marina's assertion that an acceptable down payment had been made, considering that Pier 1000 Marina would be more knowledgeable about this type of transaction and the Bank's requirements. In other words, if Pier 1000 Marina, knowing the funds had been borrowed, asserted that a down payment had been made, these Debtors could logically conclude that it was a true statement.

There is no evidence that the Debtors were aware of the Bank's policy or the reasoning underlying that policy. Prior to extending the loan the Bank did not question Debtors as to the source of the down payment.

Under the circumstances the court concludes that the Debtors honestly believed they had made a down payment satisfying the Bank's requirements. Thus, if the representation was false, the Debtors did not know it was false at the time they made it.

The Debtors and Pier 1000 Marina entered into the Retail Installment Contract. A second transaction transpired between Pier 1000 Marina and the Bank whereby the Bank purchased the Retail Installment Contract from Pier 1000 Marina, albeit with the Debtors' full knowledge and by the same document. The Retail Installment Contract states "(t)he seller has assigned this contract to the bank. You must make all future payments to the bank. *The seller is making the disclosures in this contract.*" (emphasis added.) The Retail Installment Contract also contains the following relevant language:

> The following statement is not part of the buyer's agreement.
>
> .   .   .   .   .
>
> The seller represents and warrants that ... the seller received any cash down payment or trade-in described in the Contract, that neither the seller, nor to the seller's knowledge, anyone else has lent the buyer any part of the down payment ... The seller agrees that if any of these warranties and representations are untrue, the seller will repurchase the Contract from the bank upon demand for the amount then unpaid by the buyer under the Contract, and will indemnify the bank against all its losses and expenses under the Contract.

Pursuant to this language, it was Pier 1000 Marina, rather than Debtors, that represented to the Bank that a $4,000 down payment had been made and that omitted the fact, which it fully knew, that this amount had been borrowed. Accordingly, it was Pier

1000 Marina's representation, rather than Debtors', that the Bank relied upon.[5]

The Bank has characterized the entire transaction as a "sham" designed to enable Fadden to obtain financing. It did not precisely explain how Debtors' purchase of the Boat facilitated Fadden's ability to obtain financing. Moreover, it has not explained, and the court cannot perceive, what incentive the Debtors would have to participate in a "sham" transaction. Nothing in the record suggests that Debtors stood to profit from the transaction. The court does not find it credible that Debtors would agree to commit fraud and incur a substantial liability simply to help Fadden obtain financing, particularly for a non-essential purchase. Even if Pier 1000 Marina made false representations to the Bank, there is no evidence that Debtors knowingly were a party to such action.

Not only were Debtors financially extending themselves by purchasing the Boat, the cost of use and maintenance would present an additional financial burden. Nevertheless, even if the court were to conclude that the purchase was foolish, foolish is not fraudulent. While fraudulent actions may always be foolish, foolish actions are not always fraudulent. At most, the Bank has shown that the purchase was imprudent, and that is not enough to prove intent to deceive.

Accordingly, the court finds that the Bank has not proven by a preponderance of the evidence that Debtors knowingly made a false representation, which the Bank relied upon, and which was made with the intent of deceiving the Bank. The relief sought by the Amended Complaint to Determine Dischargeability is therefore denied. The Debtors' obligation to the Bank is not excepted from Debtors' discharge. It is

SO ORDERED.

5. The court notes that under the terms of the Retail Installment Contract if the debtor defaults on the payments the Bank's remedy is against the debtor; if false representations have been made, the remedy is against the Seller.