FILED

OCT 05 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-10-1512-DPaKi |
| | ) | |
| MAGDA ANGELA ESLABON CATIPON, | ) | Bk. No. 09-24437 |
| | ) | |
| Debtor. | ) | Adv. No. 09-02084 |
| _____ | ) | |
| | ) | |
| UNION BANK OF CALIFORNIA, N.A., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MAGDA ANGELA ESLABON CATIPON, | ) | **M E M O R A N D U M**[1] |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on September 23, 2011
at Pasadena, California

Filed - October 5, 2011

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Vincent P. Zurzolo,[2] Bankruptcy Judge, Presiding

_____

[1]    This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2]    The order from which this appeal was taken was signed by Judge Zurzolo.  However, the text of the order recites that Hon. Samuel L. Bufford was the presiding judge at the evidentiary hearing upon which the order is based.

1

Appearances:   Jennifer Witherell Crastz, Esq. of Hemar, Rousso & Heald, LLP appeared for Appellant but did not argue. No appearance for Appellee.

_____

Before: DUNN, PAPPAS, and KIRSCHER, Bankruptcy Judges.

The bankruptcy court dismissed a creditor's § 523(a)(2)(A)[3] adversary proceeding on the basis that no debt existed under California law.  We AFFIRM.

## I.  FACTS

When Magda Angela Eslabon Catipon ("Ms. Catipon") filed her chapter 7 petition on June 9, 2009, she scheduled debts ("Vehicle Debts") incurred between April 15, 2008 and July 3, 2008, related to the purchase of sixteen used luxury automobiles ("Luxury Vehicles"). She also scheduled, both as a secured claim and as an executory contract, a debt incurred December 30, 2004 for her personal vehicle.  She did not include any of the Vehicle Debts on Schedule G as executory contracts or subject to unexpired leases.

Ms. Catipon's Statement of Financial Affairs reflects 2008 gross income in the amount of $53,695.00.  Her Schedule I reflects gross monthly income in the amount of $4,128.95, with net monthly take home pay in the amount of $3,264.79.  She had been employed by her current employer for seven years.

_____

[3] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

2

Union Bank of California, N.A. ("Union Bank") financed Ms. Catipon's purchase of two of the Luxury Vehicles: a 2005 Infiniti G35 ("Infiniti") on May 8, 2008, and a 2005 Land Rover ("Land Rover") on July 3, 2008. By the time she filed her bankruptcy case, Ms. Catipon had defaulted on both of the loans from Union Bank. On the Petition Date, Ms. Catipon owed Union Bank $26,106 for the Infiniti loan, and $33,013 for the Land Rover loan.

Union Bank's counsel attended the § 341(a) Meeting of Creditors in Ms. Catipon's bankruptcy case in an effort to obtain information about the locations of the Infiniti and the Land Rover. Ms. Catipon testified that the Land Rover was in the possession of Lashonda Hubbard, whom Ms. Catipon described as a friend.

Ms. Catipon further testified at the § 341(a) Meeting of Creditors that she purchased the cars for friends and relatives who had bad credit. All of the Luxury Vehicles were purchased from Richard Unite, the owner of Unite Cars in San Pedro, California. Both the chapter 7 trustee and Union Bank's counsel questioned Ms. Catipon generally about how she was able to finance the Luxury Vehicles where her annual salary was approximately $50,000. Ms. Catipon testified that she was truthful in the loan applications she made in obtaining the financing for the Luxury Vehicles, that she listed on the loan applications all of the previously financed Luxury Vehicles, and that she (apparently in some instances) provided a copy of her pay stub. In response to a rhetorical question by the trustee about why the banks would approve her loans for the Luxury Vehicles, Ms. Catipon responded: "That's also my

3

question.  I don't know why they approve[d] me."

During the course of the bankruptcy case, Union Bank recovered the Infiniti and the Land Rover, and foreclosed its security interest in each of the vehicles through a private auction. Union Bank filed a timely complaint pursuant to § 523(a)(2)(A), seeking to except from Ms. Catipon's discharge the debt which remained after the foreclosures ("deficiency").  The total deficiency asserted by Union Bank was $27,751.03, plus interest and late charges.  In its complaint, Union Bank asserted that Ms. Catipon had engaged in a scheme with Richard Unite, whereby they would "alter certain credit information" so that Union Bank and others would be induced to extend credit to Ms. Catipon.

When Ms. Catipon failed to file an answer to Union Bank's complaint, default was entered against her by the Clerk of the Court.  The bankruptcy court conducted a "trial" ("Trial") on the adversary complaint on March 11, 2010.[4]

As relevant to our analysis in this appeal, Union Bank's third witness at the Trial was its litigation adjustment officer, Jody Curry, who was responsible, inter alia, for sending defaulted loan accounts to outside counsel for litigation, and managing those loan accounts until the conclusion of the collection process.  Ms. Curry

---

[4]    The Trial was in fact a "prove up" hearing for purposes of entering a default judgment as contemplated by Civil Rule 55(b)(2), which authorized the bankruptcy court to "conduct hearings . . . when, to enter . . . judgment, it needs to . . . (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

4

testified that Union Bank had recovered possession of both the Infiniti and the Land Rover from persons other than Ms. Catipon, and that both vehicles had been sold through private auctions. Ms. Curry testified as to the auction sales prices, the net proceeds from the auction, and the deficiencies remaining on the Infiniti loan and the Land Rover loan.

The bankruptcy court admitted Exhibits 9 and 17 into evidence for the purpose of determining whether the notices sent by Union Bank to Ms. Catipon were sufficient to create a deficiency under state law. Exhibit 9 was the Notice of Intent to Dispose of a Repossessed or Surrendered Vehicle served on Ms. Catipon by Union Bank with respect to the Infiniti. Exhibit 17 was the Notice of Intent to Dispose of a Repossessed or Surrendered Vehicle served on Ms. Catipon by Union Bank with respect to the Land Rover.

At the conclusion of the Trial, the bankruptcy court found that, under California law, no debt existed after Union Bank foreclosed its security interest in the Infiniti and the Land Rover because (1) a private party auction is not a commercially reasonable disposition of collateral and (2) the notices provided to Ms. Catipon were not sufficient.[5] After an unexplained delay of nine months, the bankruptcy court entered its order dismissing the

---

[5] The bankruptcy court found that even if Union Bank had shown Ms. Catipon owed it a debt, there was no evidence in the record that Ms. Catipon made a representation to Union Bank that was false and upon which Union Bank detrimentally relied to its damage. In short, the bankruptcy court determined that Union Bank had failed to prove that any debt it was owed was incurred by fraud.

5

adversary proceeding.  Union Bank timely filed its Notice of Appeal.

## II.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES[6]

Whether the bankruptcy court erred when it determined that Union Bank did not hold an enforceable debt for purposes of § 523(a)(2)(A).

## IV.  STANDARDS OF REVIEW

We review a bankruptcy court's interpretation of state law de novo.  <u>State Bd. of Equalization v. Leal (In re Leal)</u>, 366 B.R. 77,

---

[6]    Other issues asserted by Union Bank on appeal include:

Whether the bankruptcy court abused its discretion when it refused to admit into evidence:
   a.    Ms. Catipon's testimony from the Meeting of Creditors,
   b.    Ms. Catipon's bankruptcy schedules and Statement of Financial Affairs, and
   c.    computerized records offered by the Bank; and

Whether the bankruptcy court erred when it determined that Union Bank did not provide sufficient evidence that any debt Ms. Catipon might owe to Union Bank was incurred by fraud.

Because the bankruptcy court correctly determined that Union Bank held no right to collect a deficiency following the sales of its collateral, we express no opinion on these issues.

6

80 (9th Cir. BAP 2007). De novo review requires that we consider a matter anew, as if it had not been heard before, and as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008).

## V. DISCUSSION

A chapter 7 discharge will not discharge an individual debtor from any "debt"

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition
>     . . .

Section 523(a)(2)(A). The elements for establishing that a debt is nondischargeable under § 523(a)(2)(A) are well established by Ninth Circuit authority.

> The Ninth Circuit employs a five-part test for determining when a debt is non-dischargeable under § 523(a)(2)(A). The creditor must show: (1) that the debtor made the representations; (2) that the debtor knew they were false; (3) that the debtor made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on the statements; (5) that creditor sustained damages as the proximate result of the representations. In re Britton, 950 F.2d 602, 604 (9th Cir. 1991).

Cowen v. Kennedy (In re Kennedy), 108 F.3d 1015, 1018 n.2 (9th Cir. 1997). Union Bank bore the burden of proving, by a preponderance of the evidence, each of the elements of its claim for relief under § 523(a)(2)(A). Grogan v. Garner, 498 U.S. 279, 291 (1991).

7

In the absence of an enforceable obligation, however, there is no "debt" that can be held nondischargeable. <u>Mandalay Resort Grp. v. Miller (In re Miller)</u>, 292 B.R. 409, 412 (9th Cir. BAP 2003). The bankruptcy court ruled that Union Bank held no valid debt that could be subject to a nondischargeability judgment under § 523(a)(2)(A). Specifically, the bankruptcy court determined that under California Law, Union Bank had no right to enforce any deficiency from its sales of the Infiniti and the Land Rover.

Cal. Civ. Code § 2983.2(a) provides in relevant part:

[A]ny provision in any conditional sale contract for the sale of a motor vehicle to the contrary notwithstanding, at least 15 days' written notice of intent to dispose of a repossessed or surrendered motor vehicle shall be given to all persons liable on the contract. The notice shall be personally served or shall be sent by certified mail, return receipt requested, or first-class mail, postage prepaid, directed to the last known address of the persons liable on the contract. . . . Except as otherwise provided in Section 2983.8, those persons shall be **liable for any deficiency** after disposition of the repossessed or surrendered motor vehicle **only if** the **notice** prescribed by this section **is given within 60 days of repossession or surrender and does all of the following**:

(1) Sets forth that those persons shall have a right to redeem the motor vehicle by paying in full the indebtedness evidenced by the contract until the expiration of 15 days from the date of giving or mailing the notice and provides an itemization of the contract balance and of any delinquency, collection or repossession costs and fees and sets forth the computation or estimate of the amount of any credit for unearned finance charges or canceled insurance as of the date of the notice.

(2) States either that there is a conditional right to reinstate the contract until the expiration of 15 days from the date of giving or mailing the notice

8

and all the conditions precedent thereto or that there is no right of reinstatement and provides a statement of reasons therefor.

(3) States that, upon written request, the seller or holder shall extend for an additional 10 days the redemption period or, if entitled to the conditional right of reinstatement, both the redemption and reinstatement periods. The seller or holder shall provide the proper form for applying for the extensions with the substance of the form being limited to the extension request, spaces for the requesting party to sign and date the form, and instructions that it must be personally served or sent by certified or registered mail, return receipt requested, to a person or office and address designated by the seller or holder and received before the expiration of the initial redemption and reinstatement periods.

(4) Discloses the place at which the motor vehicle will be returned to those persons upon redemption or reinstatement.

(5) Designates the name and address of the person or office to whom payment shall be made.

(6) States the seller's or holder's intent to dispose of the motor vehicle upon the expiration of 15 days from the date of giving or mailing the notice, or if by mail and either the place of deposit in the mail or the place of address is outside of this state, the period shall be 20 days instead of 15 days, and further, that upon written request to extend the redemption period and any applicable reinstatement period for 10 days, the seller or holder shall without further notice extend the period accordingly.

(7) Informs those persons that upon written request, the seller or holder will furnish a written accounting regarding the disposition of the motor vehicle as provided for in subdivision (b). The seller or holder shall advise them that this request must be personally served or sent first-class mail, postage prepaid, or certified mail, return receipt requested, to a person or office and address designated by the seller or holder.

(8) Includes notice, in at least 10-point bold type if the notice is printed, reading as follows: "NOTICE. YOU MAY BE SUBJECT TO SUIT AND LIABILITY IF

9

THE AMOUNT OBTAINED UPON DISPOSITION OF THE VEHICLE IS INSUFFICIENT TO PAY THE CONTRACT BALANCE AND ANY OTHER AMOUNTS DUE."

(9) Informs those persons that upon the disposition of the motor vehicle, they will be liable for the deficiency balance plus interest at the contract rate, or at the legal rate of interest pursuant to Section 3289 if there is no contract rate of interest, from the date of disposition of the motor vehicle to the date of entry of judgment.

(emphasis added).

Because our review is de novo, we review Union Bank's "Notice of Intent to Dispose of a Repossessed or Surrendered Vehicle" ("Notice") to determine whether Ms. Catipon is liable to Union Bank for any deficiency following its disposition of the Infiniti and the Land Rover. We conclude that the Notice did not comply with the provisions of Cal. Civ. Code § 2983.2(a) in a number of ways.

For instance, it did not inform Ms. Catipon that she had 15 days from the date of the Notice to redeem the vehicle as required by Cal. Civ. Code § 2983.2(a)(1), or that Union Bank intended to dispose of the vehicle upon the expiration of 15 days from the mailing date of the Notice as required by Cal. Civ. Code § 2983.2(a)(6). Instead, Union Bank's Notice stated: "The debtor[] . . . may redeem the collateral before sale . . ." and "Redemption payment must be made before sale . . . ." No sale date was included in either the Infiniti Notice or the Land Rover Notice. Thus, neither Notice served to inform Ms. Catipon of her need to act to redeem within any specified or referenced time period.

10

The Notice stated that "[i]n the absence of redemption or, if available, reinstatement, [Union Bank] will dispose of the collateral in the manner provided for in the 'Notice of Our Plan to Sell Property' that accompanies this [Notice]." We note first that no "Notice of Our Plan to Sell Property" was in the record for our review; neither did Union Bank offer it as evidence in the adversary proceeding. Second, this language was not sufficient to inform Ms. Catipon whether a right of reinstatement existed as required by Cal. Civ. Code § 2983.2(a)(2) and (6).

Further, the Notice did not describe the process for requesting an extension of the redemption or any reinstatement period as required by Cal. Civ. Code § 2983.2(a)(3). Nor did the Notice advise Ms. Catipon how she could obtain an accounting after the sale of the vehicle as provided by Cal. Civ. Code § 2983.2(a)(7). Finally,[7] the Notice did not advise Ms. Catipon of the extent of the liability that would remain after the disposition of the vehicle as required by Cal. Civ. Code § 2983.2(a)(9).

In light of Union Bank's failure to provide appropriate notice of its proposed disposition of the vehicles as required by Cal. Civ. Code § 2983.2(a), Union Bank is not entitled to a

---

[7] The use of the word "finally" here does not suggest that we are providing a complete catalog of the deficiencies of the Notice. Rather, it is meant to signal that we will not continue in our identification of statutory defects in the Notice.

11

deficiency by the express language of the statute.  See, e.g., Bank of America v. Lallana, 19 Cal.4th 203, 210, 77 Cal.Rptr.2d 910, 915 (Cal. 1998):

> Accordingly, we hold that to obtain a deficiency judgment, a secured creditor who sells a defaulting debtor's repossessed car must do so in a manner that complies not only with all the provisions of the [Rees-Levering Motor Vehicle Sales and Finance Act, Cal. Civ. Code § 2981 et seq], but also with any relevant provisions in division 9 of the California Uniform Commercial Code.

(emphasis added).

Union Bank asserts on appeal that the bankruptcy court abused its discretion when it raised, sua sponte, the issue of whether the Notice was adequate to impose liability on Ms. Catipon for the deficiency.  Union Bank characterizes the bankruptcy court's inquiry into the adequacy of the Notice as inappropriately raising an affirmative defense for Ms. Catipon. Union Bank also complains that it had insufficient notice that the adequacy of the Notice would be at issue.  Union Bank asserts that because the bankruptcy court raised the issue only after Union Bank had presented its case, Union Bank was precluded from presenting evidence about other "notifications" it might have made.

We disagree.  The Notice was facially defective in a number of respects.  Union Bank had the burden of proving, at the time of the Trial, that it held a "debt" that Ms. Catipon could not discharge.  In evaluating the adequacy of the Notice, the bankruptcy court did nothing more than rule on Union Bank's

12

assertion that it held a debt, based upon a deficiency, that should be excepted from discharge.

We observe that the bankruptcy court was required to construe exceptions to the discharge of Ms. Catipon's debts strictly against Union Bank and liberally in favor of Ms. Catipon. <u>Snoke v. Riso (In re Riso)</u>, 978 F.2d 1151, 1154 (9th Cir. 1992). The application of this imperative required the bankruptcy court to find that a debt in fact existed, rather than deem the debt admitted as suggested by Union Bank.

In a case with allegations of a debtor's fraud it may seem harsh to enforce a creditor's strict compliance with a notice statute designed to protect that debtor's rights. However, Cal. Civ. Code § 2983.2 provides no exceptions to compliance in cases involving alleged or actual fraud by the debtor. By comparison, Cal. Civ. Code § 2983.3 authorizes a creditor to deny a right to reinstatement, if the creditor has a good faith belief that, inter alia, any person "liable on the contract by omission or commission intentionally provided false or misleading information of material importance on his or her credit application."

We are required to apply California law as written by the California legislature and as interpreted by the California courts. On its face, the Notice did not comply with Cal. Civ. Code § 2983. As a consequence, Union Bank has no right to
///
///

13

assert a deficiency claim against Ms. Catipon.[8]

Because Union Bank holds no enforceable debt against Ms. Catipon, the bankruptcy court did not err when it dismissed the adversary proceeding.

VI. CONCLUSION

Union Bank did not comply with the notice requirements of Cal. Civ. Code § 2983.2 in selling the Infiniti and the Land Rover. As a consequence, Union Bank was not entitled to a deficiency enforceable against Ms. Catipon. The bankruptcy court appropriately dismissed Union Bank's adversary proceeding which sought a determination that the deficiency was nondischargeable pursuant to § 523(a)(2)(A).

We AFFIRM.

---

[8] We need not reach the bankruptcy court's alternative holding that Cal. Civ. Code § 2983.8 precluded Union Bank from the right to a deficiency because a private auction was not a commercially reasonable disposition of the vehicles.